THE STATE OF OHIO, APPELLANT, *v.* SMITH, APPELLEE. (TWO CASES.)

[Cite as State *v.* Smith (1990), 49 Ohio St. 3d 137.]

(Nos. 88-768 and 89-151 — Submitted September 12, 1989 — Decided March 7, 1990.)

*Arthur M. Ney, Jr.,* prosecuting attorney, *William E. Breyer* and *R. Daniel Reif,* for appellant in case No. 88-768.

*Timothy A. Oliver,* prosecuting attorney, *Joanne Hash* and *Carolyn A. Benninghoff,* for appellant in case No. 89-151.

*R. Scott Croswell III* and *Elizabeth E. Agar,* for appellee.

MOYER, C.J. The state asserts five propositions of law, one of which is related to both the Warren County and Hamilton County trials. We address this issue first.

I

The principal issue is whether the trial courts erred in allowing evidence of other acts to be introduced at each trial pursuant to R.C. 2945.59 or Evid. R. 404(B). For the reasons stated below, we hold that the challenged evidence was properly admitted pursuant to R.C. 2945.59 and Evid. R. 404(B).

This court has examined admissibility of "other acts" evidence in a number of decisions. We have stated the general rule to be "that in a criminal trial evidence of previous or subsequent criminal acts, wholly independent of the offense for which a defendant is on trial, is inadmissible." *State* v. *Wilkinson* (1980), 64 Ohio St. 2d 308, 314, 18 O.O. 3d 482, 486, 415 N.E. 2d 261, 267; see *State* v. *Williams* (1988), 38 Ohio St. 3d 346, 528 N.E. 2d 910.

Exceptions to this general rule have been limited by R.C. 2945.59 and Evid. R. 404(B) to instances where the probative value of the evidence is sufficient to allow its admission.

R.C. 2945.59 provides:

"In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

Under this section, evidence of other acts is admissible if the evidence tends to prove a specific element of the

crime charged or one of the matters specifically enumerated in the statute. See *State* v. *Curry* (1975), 43 Ohio St. 2d 66, 72 O.O. 2d 37, 330 N.E. 2d 720.

Similarly, Evid. R. 404(B) provides:

"Other Crimes, Wrongs or Acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Evid. R. 404(B) is essentially an extension of Evid. R. 404(A) which is intended to preclude a prejudicial attack on a defendant's character. Generally, extrinsic acts may not be used to prove the inference that the accused acted in conformity with his other acts or that he has a propensity to act in such a manner. However, Evid. R. 404(B) permits "other acts" evidence for "other purposes" including but not limited to certain enumerated issues. See 1 Weissenberger, Ohio Evidence (1981), Section 404.23; *State* v. *Byrd* (1987), 32 Ohio St. 3d 79, 92, 512 N.E. 2d 611, 624, certiorari denied (1988), 484 U.S. 1037.

The evidence introduced over defense objection at the Hamilton County trial for Tittle's death was testimony from sheriff's deputies from Warren County who had investigated Wright's death, and from the deputy coroner who had performed the autopsy.

At defendant's trial in Warren County for Wright's death, the transcript of the testimony of Dr. Jolly, the deputy coroner who had testified in the Hamilton County case regarding Tittle's autopsy, was read to the jury. Testimony was also given by state witness Dr. Russell Tye, the former chief toxicologist of the Hamilton County Coroner's office, and defense witness Dr. Fredric Rieders of National Medical Services, an independent laboratory. These expert witnesses had performed chemical analyses for drugs on samples of Wright's blood, urine, and stomach contents, and of Tittle's blood. The state also presented testimony from Tittle's girlfriend, his sister, and brother-in-law about Tittle's drug and alcohol habits. Two police officers who investigated Tittle's death also testified. At no time during the Warren County proceedings did the prosecution, the defense or the trial court state that a judgment had been rendered against defendant in the Hamilton County trial. The state's purpose, as explained in support of a request for admission of the evidence of extrinsic acts, was to show intent, absence of mistake, scheme and plan pursuant to R.C. 2945.59, and not to show defendant's character.

Our task is to determine the probative value of the evidence adduced, and whether it was admissible to prove any of the elements mentioned in R.C. 2945.59 and Evid. R. 404(B). See *State* v. *Gardner* (1979), 59 Ohio St. 2d 14, 13 O.O. 3d 8, 391 N.E. 2d 337.

Evidence of extrinsic acts may be used to prove intent or guilty knowledge when it is a genuine issue in a case. The acts should tend to prove that the accused understood the wrongful nature of his act by virtue of the fact that he committed prior or subsequent wrongful acts. See *State* v. *Greer* (1981), 66 Ohio St. 2d 139, 20 O.O. 3d 157, 420 N.E. 2d 982.

Intent to kill is a necessary element of the charge of aggravated murder. The Hamilton County Court of Appeals held that there was no basis on which to contend that intent was in dispute at trial and stated that

"[a]ppellant's defense was that if a crime was committed he did not do it, not that he did not intend to commit the crime. * * *" The Warren County Court of Appeals agreed with this reasoning and similarly held that evidence of the Tittle murder should have been excluded.

It is a fundamental principle of criminal law that when an accused pleads not guilty to a charge which contains "specific intent" as an element of the crime, he places intent squarely at issue and the state is required to prove this element beyond a reasonable doubt. See *State* v. *Greer, supra.* In *United States* v. *Russo* (C.A.11, 1983), 717 F. 2d 545, the court held that a defendant's defense of lack of involvement was insufficient to remove the issue of intent from the case, and "* * * the government was not relieved of its burden of proving intent." *Id.* at 552.

Both courts of appeals held that the evidence was inadmissible to prove identity. "Other acts" may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense. See *State* v. *Coleman* (1988), 37 Ohio St. 3d 286, 525 N.E. 2d 1089, certiorari denied (1988), 488 U.S. ___, 102 L. Ed. 2d 238, 109 S. Ct. 250; *State* v. *Wilkinson, supra; State* v. *Moorehead* (1970), 24 Ohio St. 2d 166, 53 O.O. 2d 379, 265 N.E. 2d 551.

In this case, the circumstances of the deaths were remarkably similar. Both victims were friends of the defendant. Both victims were overnight guests of defendant at his trailer. Both victims were frequent drug users. Defendant waited one or more hours in both instances before calling the police. Defendant cleaned the trailer both times to remove any incriminating evidence. In both instances, defendant met the officers at his trailer and told them that the victims had apparently died of an overdose of illegal drugs. Both victims died of acute morphine intoxication, having .07 milligrams percent of morphine in their blood.

Defendant asserts that Tittle accidentally consumed a lethal dose of heroin. Defendant never claimed that he had given the drug to Tittle, but claimed that somehow Tittle obtained illegal drugs and overdosed. Defendant asserts that Wright also accidentally consumed the same lethal dose of heroin that Tittle consumed. Again, he does not argue that he provided the drug, but that Wright procured the heroin somehow, and that it was purely an accident that he overdosed.

The evidence presented was relevant not to prove that defendant knew the victims, but to prove the identity of the person who gave Tittle and Wright a fatal dose of heroin. Similarly, the evidence is admissible to prove that the victims did not accidentally ingest a fatal dose of heroin, but that defendant had a specific intent to administer a lethal dose of heroin. In *State* v. *Barfield* (1979), 298 N.C. 306, 259 S.E. 2d 510, the defendant was charged with poisoning her victim to death with arsenic. Evidence of prior poisonings was introduced at trial to prove her intent to kill. The North Carolina Supreme Court upheld admissibility of evidence of other acts, stating that "* * * the deliberative features which usually attend the use of poison have historically caused the courts to receive evidence of its prior uses in order to show intent. * * * [Barfield] was tried for first-degree murder. Evidence that she had previously administered poison to others was competent to show specific intent on her part in that she had a pattern of ad-

ministering poison to persons, knowing full well the probable consequences of her actions." *Id.* at 328, 259 S.E. 2d at 529.

The reasoning in *Barfield* is applicable here. In both instances the state must prove intent to kill before a conviction for first degree or aggravated murder can be obtained.

We therefore conclude that, pursuant to R.C. 2945.59 and Evid. R. 404(B), evidence of "other acts" to prove intent to commit a crime and the identity of the perpetrator is admissible where two deaths occur under almost identical circumstances. We must therefore reverse the Hamilton County and Warren County Courts of Appeals on this issue.

## II

We turn now to the remaining propositions of law from the Hamilton County trial.

The state's second proposition of law addresses the Hamilton County Court of Appeals' reversal of a trial court order excluding defense witness Dan Dawson from testifying. Dawson arrived at the courtroom in response to defendant's subpoena, and apparently remained in the courtroom during almost two days of trial despite a separation order issued by the court. At a sidebar conference, defense counsel informed the court that Dawson had been asked to leave but for some reason failed to do so. The court decided to exclude Dawson. Defense counsel proffered Dawson's proposed testimony that Dawson had known decedent Tittle for twenty years and that Tittle was a drug addict. In addition, Dawson had been with Tittle on two separate occasions when Tittle had overdosed on drugs. Once, Dawson saw Tittle "use some sort of a powder, snort it, and become disabled." The second time Tittle

"passed out," but the proffered testimony does not indicate the nature of the substance Tittle ingested.

The threshold question is whether the trial court improperly excluded the testimony of this witness, and, second, whether such exclusion was prejudicial to defendant.

The general rule in Ohio was approved and followed in *State* v. *Cox* (1975), 42 Ohio St. 2d 200, 71 O.O. 2d 186, 327 N.E. 2d 639, paragraph one of the syllabus:

"Where, in a criminal case, a witness' disobedience of an order for a separation of witnesses is not by procurement or connivance of the party calling him, a trial court may not use such disobedience as the basis for its refusal to permit the witness to testify. * * * [Citation omitted.]"

Exclusion of witnesses is ordinarily a decision within the sound discretion of the trial court. However, where the court seeks to exclude a witness for violating a separation order, there must be a showing that the party calling the witness consented to, connived in, procured or had knowledge of the witness' disobedience. Secondly, the testimony sought to be introduced must be important to the defense such that exclusion of the evidence constitutes prejudicial error.

In this case, we do not find support in the record for the claim that defendant connived in or procured disobedience of the separation order. However, defense counsel admitted knowing at one point that Dawson was in the courtroom, and asking him to leave. Counsel should have taken more affirmative steps to have Dawson comply with the court's order. We do not hold that counsel's mere knowledge of the witness' presence requires exclusion of the witness. However, the testimony Dawson would have given merely added to other evidence

already admitted — that Tittle was a heavy user of drugs. (Tittle's sister Barbara testified that Tittle was an alcoholic and had taken cocaine in her presence.) Defendant's proffer did not mention that Tittle had previously used or overdosed on *heroin.* Had Dawson's testimony indicated Tittle's prior overdose from heroin, then such evidence would have been important to defendant's case and exclusion would have been prejudicial. Therefore, any testimony that Tittle had previously used a powdered drug was merely cumulative and its exclusion was harmless beyond a reasonable doubt.

We therefore sustain the second proposition of law.

In proposition of law number three, the state contends that the court of appeals erred in finding that an inmate improperly testified about an alleged bribe attempt related to this case.

Ed Marino was one of the inmates incarcerated with defendant at the Hamilton County Justice Center. He testified that defendant admitted to him that he placed heroin in the victims' drinks. When the state asked Marino to testify about a woman who had visited him in jail to offer him a bribe not to testify or to change his story, the defendant objected. The trial court first stated that the evidence was inadmissible unless the state could connect the bribe attempt to the defendant. However, the following then transpired before the jury:

"Q. You had a conversation with this woman; is that fair to say?

"A. Yes, sir, I did.

"Q. As a result of that conversation, sir, what did you do?

"A. Well, she —

"[Defense counsel]: Objection.

"Q. Don't tell us what she said. Can't do that. You had a conversation with her. What did you do as a result of that conversation?

"* * *

"Q. What did you tell the guard?

"A. I told the guard this woman came up and bribed me.

"[Objection and motion to strike were made.]

"* * *

"THE COURT: I don't want you to relate the details of what the woman told you. Just tell us what you told the guard.

"A. What I had told the guard is I had been offered a bribe and I turned it down."

The court then overruled a final motion to strike made by defendant.

In *State* v. *Walker* (1978), 55 Ohio St. 2d 208, 9 O.O. 3d 152, 378 N.E. 2d 1049, we recognized the general rule that " '[a]ttempts by persons other than the accused to bribe witnesses * * * are evidence against the accused when, but only when, it is proven that he was connected with such attempts. Acts and statements of third persons, not known or authorized by him, are inadmissible.' " *Id.* at 215, 9 O.O. 3d at 156, 378 N.E. 2d at 1053, quoting *Mefford* v. *State* (1920), 13 Ohio App. 106, 107, 31 Ohio C.C. (N.S.) 543, 544.

It is clear that the trial court was correct in its original ruling that such evidence could not be given unless the state could connect the alleged attempt to Smith. We do not believe that a sufficient connection was made between defendant and the alleged bribe attempt from the mere fact that Marino testified that the woman who approached him said she would have Smith's defense counsel also visit him. Nevertheless, we are also persuaded that the error is harmless. Unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required. *Chapman* v. *California*

(1967), 386 U.S. 18, 24. The relatively short reference made to the jury regarding the bribe attempt was harmless beyond a reasonable doubt, and we therefore sustain the third proposition of law.

## III

Finally, we consider the Warren County trial and the state's second and third propositions of law.

In its second proposition of law, the state challenges the court of appeals' ruling that the trial court improperly permitted a transcript of prior testimony to be read to the jury because the declarant had not been properly determined to be "unavailable" pursuant to Evid. R. 804 (A)(5).

The challenged testimony was that of Dr. Paul Jolly, the Hamilton County deputy coroner who performed the autopsy on Steven Tittle, and who testified at the Hamilton County trial.

At the beginning of the Warren County trial, the state moved to admit Dr. Jolly's prior testimony under R.C. 2945.49 or to grant a continuance until he became available to testify. After considerable discussion about whether Dr. Jolly was retired and in North Carolina or vacationing in the Bahamas, and the state's attempt to subpoena him, the court ruled "for whatever reason that Dr. Jolly isn't available."

The court of appeals held that the evidence of unavailability was not based on the personal knowledge of witnesses under oath, that the state made no other efforts to secure Dr. Jolly's presence at trial, and that defendant was precluded from cross-examining Dr. Jolly, which he should have been able to do in light of other conflicting testimony.

Evid. R. 804(A)(5) provides:

"(A) Definition of Unavailability. 'Unavailability as a witness' includes situations in which the declarant:

"* * *

"(5) is absent from the hearing and the proponent of his statement has been unable to procure his attendance * * * by process or other reasonable means. * * *"

In *State* v. *Keairns* (1984), 9 Ohio St. 3d 228, 9 OBR 569, 460 N.E. 2d 245, we stated that "[a] witness is not considered unavailable unless the prosecution had made reasonable efforts in good faith to secure his presence at trial." *Id.* at 230, 9 OBR at 571, 460 N.E. 2d at 248. This is the first of a two-part test to determine whether hearsay testimony violates a defendant's right to confront witnesses. *Ohio* v. *Roberts* (1980), 448 U.S. 56.

The second part of the test requires that the out-of-court statement bear sufficient indicia of reliability, and prior trial testimony clearly meets this requirement.[2] See *Ohio* v. *Roberts, supra,* at 66; *State* v. *Jester* (1987), 32 Ohio St. 3d 147, 154, 512 N.E. 2d 962, 970, certiorari denied (1988), 484 U.S. 1047. Dr. Jolly had been cross-ex-

---

[2] Evid. R. 804(B)(1) provides:

"(B) Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"(1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given at a preliminary hearing must satisfy the right to confrontation and exhibit indicia of reliability."

amined by defendant during the Hamilton County trial as to the autopsy and the cause of death of Steven Tittle. One of defendant's counsel in Warren County had also represented him in the Hamilton County trial, and a review of the transcript demonstrates thorough and exhaustive cross-examination.

Therefore, the first part of the test — unavailability — was the only issue for the trial court to decide. The state subpoenaed Dr. Jolly two months before the trial. The prosecutor told the trial court that she had been personally informed by Dr. Jolly that he was in North Carolina the week before trial began. Defense counsel also told the court that during their attempt to locate the witness, their investigator was informed that Dr. Jolly was vacationing in the Bahamas. It is our view that the state complied with its obligation to contact this witness, and that despite the state's and the defendant's efforts to have Dr. Jolly present at trial, Dr. Jolly was indeed "unavailable" at that time. We do not view the trial court's ruling as to his unavailability to be in error, and accordingly must reverse the court of appeals on this issue.

The state's third and final proposition of law challenges the court of appeals' holding that the jury should have been instructed on the lesser included offense of involuntary manslaughter.

In *State* v. *Deem* (1988), 40 Ohio St. 3d 205, 533 N.E. 2d 294, we stated in paragraph three of the syllabus:

"An offense may be a lesser included offense of another if (i) the offense carries a lesser penalty than the other; (ii) the greater offense cannot, as statutorily defined, ever be committed without the lesser offense, as statutorily defined, also being committed; and (iii) some element of the greater offense is not required to prove the com-

mission of the lesser offense. * * * [Citation omitted.]"

R.C. 2903.01(A), aggravated murder, provides that:

"No person shall purposely, and with prior calculation and design, cause the death of another."

R.C. 2903.04(A), involuntary manslaughter, provides:

"No person shall cause the death of another as a proximate result of the offender's committing or attempting to commit a felony."

First, the penalty pursuant to R.C. 2929.11(A) for a violation of R.C. 2903.04 is less than the penalty pursuant to R.C. 2929.02 for committing aggravated murder. Second, an offender who violates R.C. 2903.01(A) has necessarily violated R.C. 2903.04 (A) since a death results in both instances. Third, the elements missing from involuntary manslaughter, but which are required for commission of aggravated murder under division (A), are purpose and prior calculation and design.

The test established in *State* v. *Deem, supra,* having been met, we conclude that the offense of involuntary manslaughter, R.C. 2903.04, is a lesser included offense of aggravated murder as defined in R.C. 2903.01(A). See *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 218, 15 OBR 311, 357, 473 N.E. 2d 264, 310, certiorari denied (1985), 472 U.S. 1032.

However, "[t]he mere fact that an offense can be a lesser included offense of another offense does not mean that a court must instruct on both offenses where the greater offense is charged. * * *" *State* v. *Wilkins* (1980), 64 Ohio St. 2d 382, 387, 18 O.O. 3d 528, 531, 415 N.E. 2d 303, 307. In *State* v. *Solomon* (1981), 66 Ohio St. 2d 214, 20 O.O. 3d 213, 421 N.E. 2d 139, we announced in paragraph two of the syllabus: "Where the evidence adduced

on behalf of the defendant constitutes a complete defense to the substantive elements of the crime charged, an instruction on a lesser included offense should be given to the trier of fact only if, based on the evidence adduced by the state, the trier of fact can find for the defendant and against the state on some element of the greater offense which is not required to prove the commission of the lesser offense and for the state on the elements required to prove the commission of the lesser offense."

In order for the trial court to instruct the jury on involuntary manslaughter, evidence must have been given from which the jury could reasonably find that defendant gave Wright the dose of heroin. More importantly, there must have been some "reasonable view of the evidence," *Wilkins, supra,* at 388, 18 O.O. 3d at 532, 415 N.E. 2d at 308, according to which defendant could have given Wright the lethal dose of heroin but without intent to kill him.

We agree with the trial court that no evidence was given to support this theory. Defendant never admitted giving Wright any heroin at all. The evidence adduced at trial was either that defendant intentionally introduced the fatal dose into the victim's drink as proposed by the state, or that the victim consumed the fatal dose on his own as proposed by defendant. Testimony from defense experts could have allowed the jury to infer that Wright consumed the drug nasally. Beyond that, however, to find that the victim self-administered the drug *and* that defendant supplied or introduced it is an inference that goes beyond the evidence presented by the parties. For this reason, we conclude that the trial court did not err in denying defendant's request for a jury instruction on the lesser included offense of involuntary manslaughter, and reverse the court of appeals on this issue.

The judgments of the Hamilton County Court of Appeals in case No. 88-768, and of the Warren County Court of Appeals in case No. 89-151 are reversed, and the trial courts' judgments are hereby reinstated.

*Judgments reversed.*

SWEENEY, HOLMES, DOUGLAS, WRIGHT and RESNICK, JJ., concur.

H. BROWN, J., dissents.

H. BROWN, J., dissenting. The issues presented cannot be resolved by the approach to R.C. 2945.59 and Evid. R. 404(B) taken by the majority in its opinion and in the syllabus law it announces. I would affirm the decisions separately reached by the Warren County Court of Appeals and the Hamilton County Court of Appeals for the reasons articulated in the opinions issued by those tribunals.

In both cases, the state employs a bootstrap approach to the law regarding admissibility of "other acts" evidence. The state seeks to use the Warren County crime to implicate the defendant in the Hamilton County crime. Then, the state turns around and tries to use the Hamilton County crime to implicate the defendant in the Warren County crime. In reality the defendant has not been shown to have committed either of the "other acts."

The majority evades an analysis of this, the real issue in the two cases. The Warren County Court of Appeals did address the issue. It said:

"Under the prohibitive inference rule in the first sentence of Evid. R. 404(B), the state cannot introduce evidence tending to show that the accused had a propensity to commit crimes, *i.e.,* infer from the fact that the

accused had committed a similar prior act that he has likewise committed the charged crime.

"The state employs a shotgun approach in relying on R.C. 2945.59, claiming that the evidence from appellant's Hamilton County trial was introduced to show motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident as well as appellant's scheme, plan or system. The state does not elucidate its reliance on R.C. 2945.59, but simply asserts that the evidence of prior similar acts supported its allegation of prior calculation and design. *There is no explanation to relate the evidence of the Tittle homicide to Wright's death in terms of R.C. 2945.59. Prior calculation and design is not proved simply by showing that two deaths bear similar characteristics.*

"At trial, *the state called its witnesses in a carefully orchestrated manner so as to emphasize and highlight the similar aspects between the two cases.* The state first called the deputy sheriff who responded to the Kings Island trailer park. Its next witness was the Reading police officer who first responded to the scene in the Tittle case. The remaining witnesses were called in a similar fashion.

*"The evidence cannot be used to prove either identity or intent.* In *Smith, supra,* the Hamilton County Court of Appeals held that evidence of Wright's death could not be introduced in the Tittle case since intent and identity were not placed in dispute at trial. For the same reasons cited in the *Smith* decision, we believe that the evidence from the Tittle case was likewise inadmissible to prove intent or identity since neither was a material issue at appellant's Warren County trial." (Emphasis added.)

The Hamilton County Court of Appeals addressed the dispositive issue from a slightly different perspective, but reached the same conclusion on equally persuasive reasoning. The state's "other acts" evidence is not admissible under either R.C. 2945.59 or Evid. R. 404(B).

In my view the decisions which the majority has decided to reverse were on the mark. Accordingly, I dissent.