[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
DECISION AND JUDGMENT ENTRY
This case is before the court on appeal from the Lucas County Court of Common Pleas which, after a bench trial, found defendant-appellant, Willie Knighten, Jr., guilty of one count of murder, in violation of R.C. 2903.03, and one count of attempted murder, in violation of R.C. 2903.10(A). Appellant was also found guilty of gun specifications, R.C. 2929.71 and R.C.2929.14(1), attached to each count.
The undisputed facts of this case are as follows. At approximately 8:30 p.m. on the evening of June 24, 1996, a drive-by shooting occurred on Fernwood Avenue near the intersection of Forest Avenue in Toledo, Lucas County, Ohio. Two individuals were shot. Erving Turner was shot in the mouth and the bullet eventually lodged in his spinal column. Turner never regained consciousness and was transferred to a nursing home where he died on September 10, 1996. Adrias Welch was shot in the arm and sustained minor injuries.
The testimony at appellant's bench trial as to whether he was the person who shot Turner and Welch was conflicting. Michelle Bradford, Turner's girlfriend, testified that Bradford, Turner, Turner's sister Jackie Turner, Sherrice Williams, Titia Granger and Jackie and Titia's young daughters decided to walk to Smith Park on Fernwood Avenue. The group crossed Fernwood and continued over to the south side, or park side of the street. Turner then heard Adrias Welch call his name so he crossed back to the north side of the street to talk with him. Jackie Turner had also crossed the street to converse with a cousin who was in an automobile and parked facing the wrong direction in front of a carry out.
Bradford testified that a blue Cadillac approached and that she was approximately five to eight feet from the passenger side. She observed three black males and appellant seated in the back seat behind the driver. Bradford indicated that it was still daylight and there was nothing blocking her view into the vehicle. Bradford stated that three shots were fired from the vehicle and that the shots were coming from the back seat.
Bradford indicated that on February 13, 1997, Detective David Mullin of the Toledo Police Department showed her a photo array where she identified appellant as the gunman. She recognized his face but did not know his name until after she made the identification. Prior to viewing the photo array, in December 1996, Bradford saw appellant on television after his arrest in connection with the shooting. She testified that it did not affect her judgment.
Eyewitness Sherrice Williams' testimony was consistent with Bradford's. Williams testified that the individuals all wore white T-shirts and had hats on their heads. She indicated that she was approximately fifteen to twenty feet from the vehicle and that her view was unobstructed. She further testified that she did not know which of the males had fired the shots.
Williams was also shown a photo array in February. She identified appellant as the individual in the back seat of the vehicle in question.
Jacqueline Turner, Erving Turner's sister, testified that she was standing in front of the carry out talking to her niece prior to the shooting. She started back across the street when a blue four-door Cadillac nearly hit her. It stopped and allowed her to cross the street. As she got to the curb she heard gunshots. Turner testified that she threw herself on her daughter to protect her. At one point she testified that she saw the shots fired; however, she also states that she heard shots and then turned around to see where they were coming from.
Turner testified that she had an unobstructed view of the passengers and that at least the driver and possibly the back passenger were wearing white T-shirts and stocking caps with knots at the top.
On December 5, 1996, Turner was shown the photo array and identified appellant as the gunman. She testified that she did not know appellant by name prior to the identification.
Adrias Welch was also shot but not seriously wounded. He testified that he was unable to identify the passengers or the type of vehicle involved in the shooting.
Detective Dave Mullin testified that a 1989 dark blue Cadillac Brougham, four-door, had been stolen on the day of the shooting. The vehicle had been abandoned and three black males were seen exiting. Mullin testified that latent fingerprints were taken from the suspect vehicle but none matched appellant's.
During the defense portion of the trial, appellant presented alibi witnesses. Samuel Hogue testified that on June 24, 1996, at approximately 2:30 p.m., he had gotten off of work and saw appellant and some friends at Hamilton Park which is across from his home. Between 5:00 p.m. and 6:00 p.m. he and appellant walked to Fred L.'s, a neighborhood bar, purportedly to celebrate a friend's birthday. Hogue indicated that the birthday had fallen over the weekend but that he has been busy arranging a bachelor party and that Monday night was the first opportunity for everyone to get together. He was able to remember the dates because he had marked them in his calendar which was admitted into evidence.
Hogue stated that he left Fred L.'s between 11:00 p.m. and 12:00 a.m. because he had to work the next day. He testified that appellant was there the entire time.
Next, William Buford testified that on June 24, 1996, he saw appellant at Hamilton Park and that appellant indicated that they were having a birthday gathering for someone at Fred L.'s that evening. He arrived at Fred L.'s at a little after eight and left around 10:15 p.m. He did not recall seeing appellant leave during that time.
Daryl Barnett was appellant's final alibi witness. He testified that appellant also told him that people were meeting at Fred L.'s. Barnett arrived there just after 9:00 p.m. and stated that appellant was there at that time. He left at approximately 12:00 a.m. to 12:30 a.m. and testified that appellant was still there.
Appellant's trial concluded on the morning of June 5, 1997. The trial court commenced deliberations and court resumed mid-afternoon. The trial court found appellant guilty of murder and attempted murder with gun specifications. He was sentenced to three years for the gun specifications, fifteen years to life for murder, and ten to twenty-five years for attempted murder. The sentences were ordered to be served concurrently.
Appellant then filed a motion for a new trial and a motion for acquittal. Both motions were denied on November 10, 1997. Appellant then filed a notice of appeal with this court.
On appeal, appellant raises the following assignments of error:
"FIRST ASSIGNMENT OF ERROR
 NEITHER PROSECUTOR NOR DEFENSE COUNSEL REQUESTED EXCLUSION OF WITNESSES UNDER CRIM.R. 52, THUS DEPRIVING APPELLANT OF HIS DUE PROCESS RIGHTS TO A FAIR TRIAL, RESULTING IN PLAIN ERROR.
SECOND ASSIGNMENT OF ERROR
 THE EYEWITNESS TESTIMONY WAS SO EXCEPTIONALLY UNRELIABLE THAT IT DEPRIVED APPELLANT OF A FAIR TRIAL, THUS CAUSING REVERSIBLE ERROR.
THIRD ASSIGNMENT OF ERROR
 APPELLANT'S CONVICTION WAS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE
FOURTH ASSIGNMENT OF ERROR
 THE ERRORS IN TRIAL WERE CUMULATIVE, THEREBY LEADING TO A WRONGFUL VERDICT, IN VIOLATION OF APPELLANT'S CONSTITUTIONAL RIGHTS OF DUE PROCESS."
In his first assignment of error, appellant contends that the parties and the trial court's failure to exclude witnesses from the courtroom prior to giving their testimony constitutes plain error and violated appellant's rights to a fair trial. Appellee responds that absent a request by either party, a trial court is not required to order the exclusion of witnesses.
Initially we note that appellate review of a claimed error not objected to at trial is limited to a plain error review.State v. Underwood (1983), 3 Ohio St.3d 12; Crim.R. 52(B). To rise to the level of plain error, it must appear from the face of the record that the error was committed and that absent the error, the result of the trial clearly would have been otherwise. Id. at syllabus; State v. Cooperrider (1983), 4 Ohio St.3d 226,227.
Evid. R. 615 provides for the exclusion of witnesses and states:
 "At the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney, or (3) a person whose presence is shown by a party to be essential to the presentation of his cause."
Clearly, the language of Evid.R. 615 does not require exclusion of witnesses without a motion and order. Absent such order, the separation of witnesses is generally within the sound discretion of the trial court. Oakwood v. Makar (1983), 11 Ohio App.3d 46,48. Once the trial court has ordered the separation of witnesses, a violation of the order is not grounds for exclusion of the witness absent evidence of procurement or connivance by the party calling the witness and that such exclusion prejudiced the defendant. State v. Smith (1990), 49 Ohio St.3d 137, 142. Similarly, if the trial court refuses to grant a request to separate witnesses, absent a showing of prejudice, such error is deemed harmless. Toledo v. Pratt (Oct. 30, 1992), Lucas App. No. L-91-409, unreported, citing State v. Lytle (1976), 48 Ohio St.2d 391.
In the instant case, the record is devoid of evidence that any witnesses' testimony was distorted by observing the testimony of another witness. Thus, appellant has failed to establish that absent the claimed error, the result of the trial clearly would have been otherwise. Accordingly, appellant's first assignment of error is not well-taken.
Appellant next contends, in his second assignment of error, that the eyewitness testimony was so unreliable that it deprived appellant of a fair trial and, thus, rises to the level of reversible error. Specifically, appellant cites to the testimony of Michelle Bradford, Sherrice Williams, Jacqueline Turner and Adrias Welch as described above.
It is well-settled that the credibility of witnesses is a matter for the finder of fact to determine and the appellate court is not to substitute its own judgment for that of the fact-finder. State v. Grant (1993), 67 Ohio St.3d 465, 477; State v.D'Ambrosio (1993), 67 Ohio St.3d 185, 193. Moreover, in reviewing a bench trial, an appellate court must presume that the trial court applied the law correctly unless the record clearly demonstrates otherwise. State v. Coombs (1985), 18 Ohio St.3d 123,125; In re Watson (1989), 47 Ohio St.3d 86, 91.
When the trial court rendered its verdict it addressed the eyewitness testimony in question. The trial court stated:
 "It is true that Miss Bradford was much confused in her testimony as to the diagram and the positioning of the vehicles and other matters. Ms. Williams was less confused in this regard, and indeed, her testimony is highly corroborative of Jackie Turner's testimony.
"Miss Bradford is somewhat less cooperative [sic] but somewhat helpful as to both Miss Bradford and Miss Williams.
"What is crystal clear is that their accounts, especially in conjunction with Jackie Turner were not rehearsed in any way. Sure, there were minor discrepancies between each accounts, but those discrepancies enhance rather than diminish."
The trial court further stressed that:
 "Each picked him out of a photo array without prompting or suggestion, and each independent of the others, none had a motive to finger Mr. Knighten as the perpetrator. There has not even been a suggestion of that, none throughout the trial."
Upon review of the entire trial transcript and record in this case, this court cannot say that the trial court failed to follow the law when it considered the credibility of the eyewitness testimony. Accordingly, appellant's second assignment of error is not well-taken.
In his third assignment of error, appellant argues that his conviction was not supported by the manifest weight of the evidence. When an appellate court reverses a verdict as against the manifest weight of the evidence, the appellate court sits as the "thirteenth juror" and "disagrees with the factfinder's resolution of the conflicting testimony." State v.Thompkins (1997), 78 Ohio St.3d 380, 387. In reviewing the entire record, an appellate court:
 "`weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional
case in which the evidence weighs heavily against the conviction.'" Id., quoting State v. Martin (1983), 20 Ohio App.3d 172,175.
In his assigned error, appellant again argues that the eyewitness testimony is unreliable. After review of all the evidence of this case, we cannot say that the trial court lost its way and created a manifest miscarriage of justice. Appellant's conviction for murder and attempted murder is not against the manifest weight of the evidence. Accordingly, appellant's third assignment of error is not well-taken.
In appellant's fourth and final assignment of error he argues that the cumulative errors which occurred during trial led to a wrongful verdict and deprived him of his due process rights.
Cumulative harmless errors can justify a reversal of a conviction if the defendant was denied his constitutional right to a fair trial. State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. We have already reviewed the first three assignments of error presented by appellant and found that no error occurred. Thus, it follows that there were no "cumulative" errors which deprived appellant of a fair trial. Accordingly, appellant's fourth assignment of error is not well-taken.
On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal.
Melvin L. Resnick, J.
 Richard W. Knepper, J.
 Mark L. Pietrykowski, J.
CONCUR.
 _______________________________ JUDGE