OPINION
Defendant-appellant, Henry A. Holdcroft, appeals from a judgment of the Wyandot County Court of Common Pleas entered upon a jury verdict finding him guilty of one count of aggravated arson in violation of R.C. 2909.02 and one count of arson in violation of R.C. 2909.03.
The charges against defendant stemmed from an incident that took place at the residence of Kathy Hurst, defendant's then-wife, in Sycamore, Ohio. On September 7, 1998, her car and residence were set on fire.
A jury found the defendant guilty of aggravated arson and arson for the September 7 fire. The trial court sentenced defendant to consecutive terms of incarceration for ten years and five years respectively. The defendant now appeals, raising the following assignment of error:
 The verdict that the defendant is guilty of aggravated arson and arson is against the manifest weight of the evidence and must be reversed.
 A review of defendant's brief reveals that this assignment of error challenges his convictions based on the sufficiency of the evidence and also the manifest weight of the evidence. Therefore, we will apply both standards of review. When reviewing a challenge to the sufficiency of the evidence, the relevant inquiry is whether after viewing the evidence admitted at trial in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. State v. Jenks
(1991), 61 Ohio St.3d 259, paragraph two of the syllabus. A challenge to the manifest weight of the evidence "requires an examination of the entire record and a determination of whether the evidence produced attains the high degree of probative force and certainty required of a criminal conviction." State v. Getsy (1998), 84 Ohio St.3d 180, 193. Furthermore, the "[w]eight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' * * * Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law Dictionary (6 Ed. 1990) 1594.
Here, defendant was convicted of aggravated arson, a violation of R.C. 2909.02(A):
 (A) No person, by means of fire or explosion, shall knowingly do any of the following:
 (3) Create, through the offer or acceptance of an agreement for hire or other consideration, a substantial risk of physical harm to any occupied structure.
 Defendant was also convicted of arson, a violation of R.C. 2909.03(A):
 (A) No person, by means of fire or explosion, shall knowingly do any of the following:
 (4) Cause, or create a substantial risk of, physical harm, through the offer or the acceptance of an agreement for hire or other consideration, to any property of another without the other person's consent[.]
 The prosecution presented testimony from a number of witnesses to support the charges. Defendant's former wife, Kathy Hurst, testified that she observed an assailant of medium build wearing a hooded sweat shirt and a ski mask set fire to her vehicle and to her residence, which occurred at approximately 1:00 a.m. on September 7, 1998. Kathy further testified that defendant told her if she ever left him, he would burn her house down.
Sonia Barth testified in pertinent part: (1) she had been granted immunity in return for her testimony during the trial; (2) her husband, Dennis Barth, and Jim Weaver were going to buy defendant's business but ended up not buying it because of a disagreement about the amount of the accounts receivable and the bills attributable to the business; and (3) she was upset that defendant then offered to sell the business to someone else at a better price and that defendant paid another employee more than what he had paid her husband for working. Even so, however, the taped conversation between Sonia and the defendant played at trial evidences the fact that defendant did discuss David Barth with Sonia and she was asked to tell David "to keep [his] mouth shut." Some discussion was had about apparently instructing David to leave town.
Dennis Barth testified at the trial in pertinent part: (1) he was given immunity in return for his testimony at trial and his testimony was given in consideration for a reduced burglary charge pending against him upon the victim's agreement; (2) he discussed their plans to purchase the business, which fell through; and (3) defendant allegedly told Dennis during a taped conversation between himself and defendant, which was inaudible and not played for the jury, that defendant allegedly told him that he had paid David Barth to burn the car. In addition, during the taped telephone conversation with defendant introduced into evidence, Dennis discussed the fact that he has kept David away from the area so defendant would not get busted for that deal involving his former wife's car as defendant had asked and that he gave David money from defendant's bank account. Defendant replied that he appreciated it. Defendant also made the following statements in this taped prison telephone conversation with Dennis: "I did talk to Dave last night. There is nothing they have, okay. And tell him to keep quiet and they can't prove nothing, no." (TR 411). Additionally, the following appears in the transcript of that taped conversation:
 "DENNIS BARTH: Well, what the hell did you get a kid to do it for Henry?
 "HENRY HOLDCROFT: I don't know. Okay.
 "DENNIS BARTH: Huh?
 "HENRY HOLDCROFT: That's a fuck up, you know. Uh, I just, you know, tell him he has got to keep his mouth shut, you know. He don't know nothing, you know.
 * * *
 "DENNIS BARTH: Are you going to leave her alone this time when you get out?
 "HENRY HOLDCROFT: Yeah. I'm leaving the area, buddy. I'm going to leave the area. I'm going south. I'm going to start over with nothing. I hope Anna sells my house and I'd like to see Anna buy the business. (TR 416)
 David Barth, age eighteen, stated that he was charged with arson and aggravated arson, but he denied that he was promised anything in exchange for his testimony in this matter. David testified that defendant asked him to burn Kathy's car and house, showed him Kathy's residence in Sycamore and directed him on the route. According to David, on the evening of the incident, defendant asked him to do the job at that time, and informed him that he would lose his job with defendant's carpet business if he did not do so. When defendant questioned him on whether he could find a ride, David thought of Aaron Dunn. David testified that defendant took him to Aaron's house and when he returned to defendant's house with Aaron, defendant supplied two plastic gas cans full of gas, gloves, a flannel shirt, paper towels to light the fire, and a ski mask and then paid him some money for the job. After he and Aaron drove to Sycamore, David took the gasoline and dumped it over the front end of the car and at the house. The jury thereafter heard that during a taped conversation between David and the defendant, defendant counseled the young man not to admit anything to the police and specifically stated "I need you to stay away and don't say nothing." (TR 534)
Aaron Dunn testified that he was charged with complicity to commit arson, but no promises had been made in exchange for his testimony. Aaron corroborated David's testimony, stating that he overheard much of the discussion between defendant and David on the evening of the incident. Specifically, Aaron heard defendant ask David if he remembered where "her house was at," that he wanted David to start a fire and that the two talked about what David needed. Aaron also recounted that defendant gave David gasoline, gloves, a ski mask and some money. Finally, Aaron testified that after he drove David to Sycamore and parked the car near the house David had previously pointed out, David got the items out of the trunk and walked away. Aaron testified that he saw a "big fire ball" come from that area of the house where David had headed. David ran back to the car and Aaron then took off.
The jury also heard testimony from Joshua Shula that prior to the incident in question defendant had asked him to burn defendant's wife's car and house and offered him money to do so. While defense counsel elicited testimony from Joshua that he thought defendant was joking, there was evidence that defendant gave him a piece of paper with the address of the targeted property.
In sum, there was evidence presented that defendant entered into an agreement with David and that he had supplied the items used in the fire. Both David Barth's and Aaron Dunn's testimony directly implicated the defendant in such criminal activity. Although, as defendant argues, the surrounding circumstances of many of the State's witnesses placed the credibility of the witness in question and further points to inconsistencies in David's statements concerning the amount of money to be paid for the job, defendant's own taped phone conversations with State witnesses did corroborate the fact of his involvement. The State also presented the testimony of defendant's former wife and Joshua Shula. Their testimony provided compelling evidence concerning defendant's prior threats to exact revenge against his then-wife by burning her house and his solicitation to have Joshua do the job. Thus, in light of the testimony of the State's witnesses and the taped conversations of statements made by defendant that tended to incriminate him, defendant's convictions for arson and aggravated arson were supported by sufficient evidence. We also do not find that the jury clearly lost its way or acted against the manifest weight of the evidence by finding defendant guilty. Defendant's assignment of error is overruled.
The State of Ohio filed a motion for leave to appeal from the judgment of the trial court, which this court granted. The State's assignment of error states as follows:
 The lower court abused its discretion when it excluded relevant "other acts" evidence of appellant, which occurred subsequent to the commission of the offense.
 The State argues that the trial court erred and abused its discretion by excluding testimony from Paul Dyer. The proffered testimony from this witness was that defendant approached him after the fire, but on the same day of the fire, soliciting him to "blaze" the house of defendant's then-wife. The State argues that this other act was admissible to show defendant's identity, motive, and plan in burning the house in question.
Generally, "evidence of previous or subsequent criminal acts, wholly independent of the offense for which a defendant is on trial, is inadmissible." State v. Smith (1990), 49 Ohio St.3d 137,139. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. Evid.R. 404(B). However, Evid.R. 404(B) permits other-acts evidence for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. See, also, R.C. 2945.59. As the Ohio Supreme Court held in State v. Lowe
(1994), 69 Ohio St.3d 527, 530, evidence of other acts is admissible if (1) there is substantial proof that the defendant committed the alleged other acts, and (2) the evidence tends to prove any of those enumerated purposes.
In this case, the testimony at issue pertains to defendant's act in soliciting Paul Dyer for the exact same crime for which the defendant was currently being tried, only after the fire on the day of September 7, 1998. In our view, such "other act" solicitation evidence would be probative evidence of defendant's guilt of the particular offense in question, particularly since it was close in time to the charged offense. Therefore, under the circumstances, the State's "other act" evidence could be admitted to prove matters within the scope of Evid.R. 404(B) and R.C.2945.59. Thus, we find that it was error to exclude the testimony from Paul Dyer. Accordingly, the State's assignment of error is sustained.
Having found no error in the verdict of the jury convicting defendant, we affirm the trial court's judgment.
Judgment affirmed.
 HADLEY, P.J., and BRYANT, J., concur.