OPINION
Defendant David C. Walker appeals the August 22, 2000 judgment of the Seneca County Court of Common Pleas finding him guilty of two counts of Weapons under Disability.
On September 4, 1999, two Fostoria Police officers visited the apartment of Debbie Hathaway in Fostoria, Ohio to investigate an allegation that Ms. Hathaway was in the possession of stolen checks. Ms. Hathaway consented to a search of her residence for the checks, and during the search Detective Mike Russell found an Arminus .38 caliber handgun in a shoebox in a bedroom closet. The gun was not loaded, and no ammunition was found on the premises. Ms. Hathaway, a convicted felon on probation, denied ownership of the gun. Ms. Hathaway told Detective Russell that "people come over to my house and leave things" and indicated that she thought that the gun might belong to an individual called "Keith Flowers." Subsequent investigation of the handgun records indicated that the Arminus .38 had been purchased by Blain Hummel Jr. from Lima, Ohio, but Mr. Hummel told officers that he had no recollection of purchasing the weapon.
On September 24, 1999, Ms. Hathaway met with Detective Mike Clark of the Fostoria Police Department, and told him that she had been contacted by a man she knew as "Champ." Ms. Hathaway stated that this man had asked her not to disclose that he had left the Arminus .38 handgun at her residence. Ms. Hathaway told Detective Clark that "Champ" had contacted her on several occasions, and had asked her to take the blame for the handgun. She further stated that "Champ" had offered to pay her attorney fees if she got arrested. Detective Clark assembled a photo array of six individuals, and Ms. Hathaway identified the defendant David Walker as "Champ."
At some point thereafter, the multi-county METRICH drug task force obtained a search warrant for 167 E. Crocker St. in Fostoria, Ohio. When the task force executed the warrant on December 15, 1999, they found two people on the premises: Jinetta Dorbin, and defendant David Walker. Ms. Dorbin and the defendant were read their Miranda rights and taken to the living room of the premises while the task force searched the house. One of the officers searching the house, Detective Mike Clark of the Fostoria Police Department, asked Ms. Dorbin and the defendant if there were any weapons in the house. The defendant stated that there was a gun with a safety lock in a clothes hamper in the bathroom. The defendant indicated that he had purchased this weapon approximately three months previous at a Wal-Mart in Toledo, Ohio. Another officer overheard this conversation, went the bathroom, and found an unloaded Jennings .38 caliber handgun with a safety lock in a clothes hamper, along with a box of ammunition. Subsequent investigation of the ownership records of the gun indicated that it had been purchased at a pawn shop in Findlay, Ohio on November 17, 1999 by a man named Louis A. Riley, but had been reported stolen at some point after that purchase.
On December 22, 1999, defendant was indicted for two third-degree felony violations of R.C. 2921.13(B), Having Weapons Under Disability. On April 27, 2000, the case was dismissed without prejudice because the State's counsel was unavailable to proceed to trial. The defendant was re-indicted on the same charges on May 24, 2000, and the case proceeded to jury trial on August 21, 2000. The defendant appeared at the trial in his orange jail jumpsuit, and the defense failed to object or make a motion for the defendant to appear in street clothes. Several state witnesses testified without objection by defense counsel regarding the defendant's prior criminal record and previous "bad acts." The State also presented testimony regarding Debbie Hathaway's statements to Detective Russell and Detective Clark. Ms. Hathaway herself did not testify, and the defendant's counsel objected to this testimony on the basis of hearsay. The trial court overruled this objection, determining that Ms. Hathaway was unavailable and that her statements were made against her pecuniary interest. The court therefore held that the statements were within the exception stated in Evid.R. 804(B)(3) and allowed them to be admitted into evidence.
After the State rested, the defendant moved for a judgment of acquittal pursuant to Crim.R. 29, arguing that the State had failed to establish the elements of the crime as set forth in the statute:
 (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * [t]he person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been an offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.
 (B) No person who has been convicted of a felony of the first or second degree shall violate division (A) of this section within five years of the date of the person's release from imprisonment or from post-release control that is imposed for the commission of a felony of the first or second degree.
 (C) Whoever violates this section is guilty of having weapons while under disability. A violation of division (A) of this section is a felony of the fifth degree. A violation of division (B) of this section is a felony of the third degree.
R.C. 2923.13. Specifically, while the defense admitted that there was evidence that the defendant had been convicted of a previous aggravated drug trafficking charge, it argued that the only evidence of possession of one of the weapons was hearsay testimony and also that the State had failed to admit any evidence that the defendant had been released from incarceration within five years. The trial court granted the motion in part:
 Well, the court's concern[ed] that there has been no evidence that the defendant had been released within five years from the date of imprisonment; that is required as an element in this case and, therefore, I'm going to grant it as to that, your motion, to grant it as to that requirement.
 * * * * [I]t's still a valid felony charge. It[`s] just reduced from a felony three to a felony five under Ohio law and that the (B) section is no longer applicable. It's just an (A) section, [R.C.] 292[3].13.
 As to all other reasons, the Court finds that there has been sufficient evidence for the jury to determine whether the defendant on both counts had a weapons [sic] under disability under (A), uhm, (3) in this case; therefore, [I] will allow this case to proceed to the jury under [R.C. 2923.13] (A)(3) but not under [R.C. 2923.13](B).
Transcript at **216-18. After the trial court's ruling, the State made a motion to reopen its case, which was denied. The State rested, and the defense chose to rest without presenting a case. The trial court then announced that closing arguments and jury instructions would commence on the following day, and excused the jury for the day.
The following morning, the State renewed its motion to reopen, asserting that Debbie Hathaway had been located and was able to testify, and also that Detective Clark could testify "as to the status of Mr. Walker with regard to his release as to fulfilling the statutory requirement * * *." The Court granted the motion, noting that after the State rested its case "[t]he defense then went on to present no evidence and rested. There was not a second motion for acquittal under Rule 29 (B) at the end of all the evidence." Based upon this observation and case law supplied by the State, the trial court granted the State's motion to re-open over the objection of defense. Debbie Hathaway then testified consistent with her hearsay statements as they were originally admitted, and Detective Clark testified that defendant had been released from prison on April 16, 1999, "approximately two months before the search warrant." After the State rested its case for a second time the defendant chose to testify on his own behalf. He denied possession of the guns, denied that he knew the location of either gun, stated that he had never been to Debbie Hathaway's residence, and indicated that he had never seen Debbie Hathaway prior to her testimony that day.
The case was submitted to the jury, and the jury returned two signed verdict forms, both of which read as follows: "[w]e, the jury, find the defendant, David C. Walker, GUILTY, of the charge of Having Weapons While Under Disability." The trial court proceeded to sentencing, and sentenced the defendant to two three-year terms of imprisonment, to be served consecutively. The defendant now appeals, and asserts five assignments of error with the trial court's judgment.
The trial court err[ed] and abused its discretion by permitting the State to re-open its case to introduce evidence, through Det. Clark, of the defendant's release date from prison after the defendant's motion for acquittal was granted and the charges reduced to exclude the requirement of evidence of the defendant's release date from prison[.]
The defendant was denied the protections against double jeopardy, and for [sic] due process and equal protection setforth [sic] in the Fifth
and Fourteenth Amendments to the United States Constitution, and Article1 Sec. 10 of the Ohio Constitution, when the trial court rescinded its grant of the defendant's motion for acquittal and permitted the case to be tried again as third degree felonies [sic].
To facilitate our review, we will begin by addressing defendant's first and fourth assigned errors. In both assignments, the defendant contends that the trial court prejudicially erred by allowing the State to reopen its case and present evidence that had been released from prison within five years of his alleged possession of the weapons. The reopening ostensibly permitted the State to pursue a conviction for third-degree felony violations of R.C. 2923.13 as specified in subsection (B). The defense argues that the trial court had already granted a judgment of acquittal under Crim.R. 29 on that element of the charges, and therefore he could only be properly convicted of fifth-degree felonies under R.C.2929.13(A)(3).
Both the defendant and the State have approached this appeal based on the assumption that defendant was in fact convicted of two third degree felonies. However, the jury verdict forms merely state that the defendant was "GUILTY, of the charge of Having Weapons While Under Disability" without reference to the indictment or to the five-year requirement of R.C. 2923.13(B). Pursuant to R.C. 2945.75(A)(2), "[w]hen the presence of one or more additional elements makes an offense one of more serious degree * * * [a] guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged." Although courts have repeatedly found substantial compliance with the statute where the verdict form states that the defendant is guilty of the crime "as charged in the indictment" and the jury is properly informed of the contents of the indictment, see, e.g., State v.Woods (1982), 8 Ohio App.3d 56, 63, in this case the verdict forms made no reference to either the indictment or the aggravating element. Cf.State v. Pusey (July 11, 1991), Shelby App. 17-90-1, unreported, 1991 WL 128233 at *4-6. The forms, therefore, were competent to convict the defendant only of "the least degree of the offense charged." R.C.2945.75(A)(2). See also State v. Rakes (Dec. 30, 1997), Paulding App. No. 11-97-9, unreported, 1997 WL 791525 at *3-4.
Accordingly, even if the trial court erred by allowing the State to reopen its case to present evidence on the enhanced charge, cf. Columbusv. Grant (1981), 1 Ohio App.3d 96, 98 (holding that double jeopardy may be implicated when a case has been terminated by a final judgment), that error did not compromise the trial proceedings because defendant was infact convicted by the jury of two fifth-degree felonies. Accordingly, his first and fourth assignments of error are sustained only insofar as the trial court's sentence was inconsistent with the jury's verdict.
The trial court err[ed], and abused its discretion, when it granted the State's second motion to reopen their [sic] case to present the testimony of Debbie Hathaway.
The defendant was improperly denied his constitutional rights to confrontation of witnesses and evidence, under Article 1 Sec. 10 of the Ohio Constitution, and the 6th [sic] Amendment to the United States Constitution, by the introduction of improper hearsay not subject to any exception, which evidence if properly excluded would have left the State with insufficiently presented evidence to sustain their burden of proof and compelled the court to grant the defendant's Criminal Rule 29 motion at the close of the State's case.
We will address defendant's second and third assignments together. Defendant's third assignment of error asserts that the trial court erred by failing to grant the defendant's judgment of acquittal on count one of the indictment, relating to the handgun found at Ms. Hathaway's apartment. Defendant argues that the hearsay testimony introduced in the State's original case-in-chief was inadmissible, and that this inadmissible hearsay testimony was the only evidence that linked the defendant to the weapon described in the indictment.
The defendant did not at trial and does not on appeal dispute that the State made a reasonable, good-faith attempt to secure Ms. Hathaway's presence at trial. Cf. State v. Smith (1990), 49 Ohio St.3d 137, 144, citing State v. Keairns (1984), 9 Ohio St.3d 228 . See also Transcript at **186-92 (describing attempts to secure Ms. Hathaway's presence). Moreover, the State established that Ms. Hathaway was on probation at the time her statements were made, and also that the statements contained admissions which, if true, would constitute grounds for revocation of that probation. See id. at **193-95 (describing generally Ms. Hathaway's community control conditions). Cf. Evid.R. 804(A)(5) 804(B)(3). We therefore believe that the trial properly determined that Ms. Hathaway was both unavailable to testify and that her statements were against her pecuniary interest. Cf. Keairns, 9 Ohio St.3d at 228.
Notwithstanding these findings, the defendant argues that the admission of Ms. Hathaway's hearsay statements violated his right to confront witnesses. In Lilly v. Virginia (1999), 527 U.S. 116, the United States Supreme Court held that even if they are admissible under Evid.R. 804(B)(3), "accomplices' confessions that inculpate a criminal defendant are not within a firmly rooted exception to the hearsay rule as that concept has been defined in * * * Confrontation Clause jurisprudence."Id. at 134. In Lilly, the Court determined that hearsay statements "that shift or spread the blame to a criminal defendant" are inadmissible under the Confrontation Clause (notwithstanding Evid.R. 804(B)(3)) unless the proponent of the statements is able to overcome "the unreliability that attaches to accomplices' confessions." Id. at 133-34. Moreover, the Court observed that it was "highly unlikely" that the presumption of unreliability could be overcome "when the government is involved in the statements' production, and when the statements describe past events and have not been subjected to adversarial testing." Id. at 137.
However, even if Ms. Hathaway's hearsay statements were admitted in violation of the Confrontation Clause, this error was harmless beyond a reasonable doubt, because it was within the trial court's discretion to reopen the case and permit Debbie Hathaway to testify. In Columbus v.Grant (1981), 1 Ohio App.3d 96, the Court of Appeals for the Tenth District addressed a similar issue:
 At the conclusion of cross-examination * * * the city rested; and, after a recess, the defense rested and then moved for a judgment of acquittal because the city's sole witness had failed to specifically identify the defendant * * *. The trial court, over defendant's objection, permitted the prosecution to reopen its case to allow the officer to make the identification.
The Grant court observed that "the question of opening up a case for the presentation of further testimony is within the sound discretion of the trial court." Id. at 97. It held that the court's decision to reopen was not an abuse of discretion and observed that the defendant had not been placed twice in jeopardy:
 If defendant is to prevail on her double jeopardy contention, she must first show that the case had been terminated by final judgment prior to the court's ruling which permitted the case to be reopened for additional prosecution testimony. * * * * Accordingly, [because] the case had not been terminated * * * the defendant was not twice placed in jeopardy.
Id. at 98. We believe the instant situation is similar. Although the court did grant defendant's motion for acquittal insofar as it reduced the charges to fifth-degree felonies, its decision overruling the remainder of the motion was not a final judgment. Therefore, the court's decision to permit Ms. Hathaway to testify was within its discretion and did not place the defendant in double jeopardy. Moreover, because Ms. Hathaway's actual testimony was substantially similar to the hearsay statements received and because defendant was provided a full and free opportunity to cross-examine her, any error caused by the admission of her hearsay statements was cured by her subsequent testimony. For these reasons, defendant's second and third assignments of error are overruled.
The defendant was ineffectively represented by counsel, to the detriment of his case, and the cause should be retried.
In his fifth assignment or error, defendant argues that his trial counsel was ineffective. Specifically, the defendant contends that his trial counsel failed to object to the admission of "prior acts" evidence, failed to request an expert to examine the firearms for fingerprints, failed to request a curative instruction from the court following the re-opening of the State's case, and allowed the defendant to be tried in his orange jail jumpsuit without a curative instruction. In analyzing such claims, it is important to emphasize that properly licensed attorneys are presumed to be competent, and that the defendant bears the burden of proving that his trial counsel was ineffective. SeeState v. Hamblin (1988), 37 Ohio St.3d 153, 155-56. Moreover, a defendant asserting that his counsel was ineffective has the burden of establishing that his trial counsel's decisions fall outside what could be considered a sound trial strategy. See State v. Braxton (1995),102 Ohio App.3d 28, 48, citing Strickland v. Washington (1984),466 U.S. 668, 689. In Strickland, the United States Supreme Court established a two-pronged test to analyze claims of ineffective assistance of counsel:
 First, defendant must show that counsel`s performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial.
State v. Clemons (1998), 82 Ohio St.3d 438, 449-50, quoting Strickland,466 U.S. at 687. Applying the foregoing standard, defendant has failed to establish that his trial counsel "was not functioning as the `counsel' guaranteed * * * by the Sixth Amendment." Trial counsel's decision not to hire a fingerprint expert was unquestionably tactical, because such an expert might have uncovered evidence that further inculpated the defendant. Moreover, defendant has not argued or established that he was forced to appear in his jail jumpsuit, cf. Estelle v. Williams (1976),425 U.S. 501, 504, and he has similarly not established that counsel's decisions not to request a curative instruction and failure to object to "prior acts" testimony were anything but strategic in nature. In fact, the specific prior act presented — defendant's presence on premises where a search warrant was being executed and the fact that he was not charged with any wrongdoing as a result of his presence — was consistent with his position at trial that he was merely at the wrong place at the wrong time. Therefore, we conclude that defendant has failed to meet his burden under Strickland and overrule his fifth assignment of error.
For the foregoing reasons, defendant's second, third and fifth assignments of error are overruled. Defendant's first and fourth assignments of error are sustained in part. This case is reversed in part and remanded to the trial court for sentencing consistent with this opinion.
Judgment affirmed in part, reversed in part, and cause remanded.
 BRYANT and HADLEY, JJ., concur.