OPINION
Defendant-appellant, Cecil McQueen, appeals his conviction in the Butler County Court of Common Pleas for rape. For the reasons that follow, we affirm the decision of the trial court.
On the evening of September 8, 1998, appellant was at his trailer-home with his two children, twelve-year-old C.J.M. and eleven-year-old E.M., and two of his friends. Appellant's wife, Rita McQueen, had left to go to work. Appellant and his friends, Larry Phelps and Dean O. Wagers ("Dino"), were drinking beer and watching wrestling on television.
According to the testimony of eleven-year-old E.M., she was asleep on the couch when the wrestling ended. Appellant woke her and asked her to go to his bedroom. E.M. told him that she did not want to go. She fell asleep again, but appellant woke her a second time and they went to his bedroom. E.M. testified that appellant played a pornographic video and told E.M. to take off her clothes. When E.M. protested, appellant threatened that he would take her clothes off if she did not. E.M. undressed and appellant told her to lie down on the bed. Appellant got on top of her and put his penis inside of her (in her "cat"). Then appellant put his finger inside of her. E.M. said, "Dad, I'm a little girl and, and you have a wife." Appellant told her to be quiet. E.M. attempted to run out of the bedroom, but appellant grabbed her by her pony-tail, threw her down on the bed, and turned her head to force her to watch the pornographic video.
E.M. testified that appellant was about to touch her again when her mother, Rita, came in the door. Rita told E.M. to put her clothes on. E.M. ran outside to be with C.J.M.
E.M.'s brother, C.J.M., testified that Dino visited their home earlier that evening but had left. C.J.M. testified that on the night of the rape, he was in his bedroom trying to fall asleep when he heard E.M. crying. C.J.M. asked appellant if he could sleep in the family room and appellant said that he could. Then C.J.M. heard E.M. screaming. He tried to leave, but appellant heard him and threw him against a dresser. C.J.M. testified that "[h]e put my arm in a dresser drawer and started shoving up against my arm." C.J.M. tried to leave a second time, and exited the home through the back door. C.J.M. left to get Rita, who was working at a nearby Burger King.
Rita testified that C.J.M. arrived at Burger King between 11:30 p.m. and 12:00 a.m. and said that she needed to come home. C.J.M. did not explain the reason for urgency, and Rita thought that appellant might be suffering from a seizure, because he had suffered from seizures years ago. When Rita and C.J.M. arrived at the trailer, Rita went to the master bedroom and saw E.M., naked and lying on the bed. Rita testified that appellant was lying down next to E.M. and a pornographic video was playing on the bedroom television. Rita said that appellant's penis was outside of his shorts and his hand was in her daughter's "cat." When Rita asked him what he was doing, appellant responded, "Have you ever been lonely?" Rita testified that she and her children returned to Burger King, and her boss advised her to call the police.
Detective John H. Nethers of the city of Hamilton Police Department testified that he interviewed appellant at 2:00 or 3:00 a.m. Appellant gave a verbal statement, which was then typed and signed by appellant. In his statement, appellant claimed that he became drunk after drinking about thirty beers. In his statement, appellant stated that he played a video in his bedroom but did not remember anything else until the police knocked on the door. Appellant did not admit to doing anything inappropriate to E.M. The detective testified that appellant seemed fine and appeared to understand what was happening during the interview. The detective said that, in his opinion, appellant was not intoxicated at the time of the interview.
Robin Phelps, one of appellant's neighbors, testified that her husband, Larry, was one of appellant's friends. According to Robin, that evening appellant asked her if she had any scary videos or pornographic videos. Appellant wanted to borrow a scary video for his children and a pornographic video to watch with his wife. Robin let appellant borrow three movies, including a pornographic video. The next morning, Robin found the pornographic video that she had lent appellant underneath the outside steps to her home.
Appellant also testified at trial. His testimony was consistent with his statement to the detective but conflicted with the testimony of Rita, E.M., and C.J.M. Appellant testified that he and Rita were not getting along very well and that he suspected that there might be some sort of relationship between Rita and Dino. Appellant also said that he fought with Rita about his drinking habit, and that he drank about thirty beers everyday.
Appellant testified that on the night in question Dino and Larry visited him after Rita had left for work. Appellant admitted that he had borrowed a pornographic video from Robin, but said that he gave it to Dino at about 9:00 p.m. Appellant testified that his children went to bed in their bedrooms at around 9:30 p.m. Dino left appellant's home but returned at about 9:30 or 10:00 p.m. Appellant testified that Dino had attended a bachelor party, became involved in a fight, and needed a place to stay. According to appellant, Dino was on the sofa when appellant went to bed at 10:30 or 11:00 p.m.
Appellant testified that he took a video he had borrowed from Robin, "History of the World," into his bedroom to watch it. Appellant asserted that he was alone, that he drank a few more beers, and fell asleep. He claimed that he did not wake up until about 2:00 a.m. when "they was beatin' on the side of my trailer." Appellant denied raping, molesting, or inappropriately touching E.M.
At trial, the defense presented witnesses in an effort to suggest that the case against appellant was fabricated. Chasteen King, a teenager who lived several trailers away from appellant's home at the time of the incident, testified. She stated that since appellant's arrest, Dino has visited appellant's trailer to talk to the children. Chasteen also testified that Rita said that she had to explain to E.M. what to say in court. Appellant's sisters, Stella Joslyn and Betty Overby, testified that the day after appellant's arrest, Rita told them that appellant was "locked up" and "put away." Joslyn and Overby said that Rita seemed proud of what she had done.
The state presented two rebuttal witnesses. The first rebuttal witness, Shauntee Akers, lived next door to appellant's family at the trailer park. She testified that she was outside smoking a cigarette on the night in question when she heard appellant yelling at his children for about ten to fifteen minutes. Later she heard Rita scream "`Damn it Cecil!'" There was a lot of commotion and then it became quiet again. Then Akers saw appellant walk over to the Phelps' trailer. She did not see what appellant did at the Phelps' trailer, except that he stood in front of the steps. Appellant walked home, and Akers noticed that appellant was not wearing a shirt or shoes. Shortly thereafter, the police arrived.
The second rebuttal witness was Detective Sherry Marcum of the city of Hamilton Police Department. Defense counsel objected to Marcum's testimony, but the objection was overruled. Marcum testified that she was called to investigate the rape of a child and arrived at appellant's home at about 1:00 a.m. Marcum interviewed E.M. and testified as to what E.M. told her had happened that night. Marcum's recollection of what E.M. told her at the interview was consistent with E.M. and Rita's testimony at trial. On cross-examination, Marcum stated that her first contact with E.M. was a few hours after the rape had occurred, and that E.M. was in the company of Rita during that time.
At the trial's conclusion, the jury found that appellant was guilty of rape, a felony of the first degree. The jury further found that appellant used force to compel the victim to submit. The trial court sentenced appellant to life imprisonment. Appellant appeals, raising five assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT REFUSED TO ALLOW THE VICTIM'S MEMORY TO BE REFRESHED BY STATEMENTS THE VICTIM MADE TO THE NURSE AT THE HOSPITAL.
 In his first assignment of error, appellant argues that the trial court erred by refusing to allow E.M. to refresh her recollection by reading notes taken from a nurse regarding statements E.M. had made at the hospital after the rape.
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Robb (2000),88 Ohio St.3d 59, 68, quoting State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of discretion as well as a showing that the accused has suffered material prejudice, an appellate court will not disturb the ruling of the trial court as to the admissibility of evidence. State v. Martin
(1985), 19 Ohio St.3d 122, 129, certiorari denied (1986),474 U.S. 1073, 106 S.Ct. 837.
Refreshing the recollection of a witness is permitted under Evid.R. 612, which states in relevant part:
 [I]f a witness uses a writing to refresh his memory for the purpose of testifying, either: (1) while testifying; or (2) before testifying, if the court in its discretion determines it is necessary in the interests of justice, an adverse party is entitled to have the writing produced at the hearing. He is also entitled to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness.
 The "writing" discussed in Evid.R. 612 does not have to be an original document or recording. Weissenberger, Ohio Evidence Treatise (2000) 282, Section 612.3. Nor does it have to be executed or previously adopted by the testifying witness. Id.
When a witness uses a statement under Evid.R. 612 to refresh her recollection, a party may not read the statement aloud, have the witness read it aloud, or otherwise place it before the jury. State v. Ballew (1996), 76 Ohio St.3d 244, 254.
The trial court did not allow defense counsel to ask E.M. to read a copy of notes taken by a nurse who spoke with E.M. after the rape occurred. We are reluctant to say that the trial court abused its discretion by ruling that E.M. should not read these notes. To present E.M. with nurse's notes would likely confuse or bewilder the young girl, rather than help her to remember her words to a nurse following a traumatic event.
Moreover, appellant cannot show that he suffered material prejudice. The nurse's notes were not admitted into evidence or proffered, and therefore are not a part of the record before us. Without knowing the content of these notes, we cannot find that appellant was materially prejudiced by the trial court's ruling. We find that the trial court did not abuse its discretion and did not materially prejudice appellant by not allowing E.M. to review the nurse's notes. The first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT REFUSED TO ALLOW ANY EVIDENCE REGARDING PRIOR CONVICTIONS FOR SEX OFFENSES OF DEAN WAGERS.
 In his second assignment of error, appellant argues that the trial court erred by refusing to allow Dino's sister-in-law to testify about Dino's prior conviction for molesting children and a court order forbidding him to have contact with children. Although appellant's counsel did not have a certified copy of the entry of judgment of such conviction or court order, he argues that this information should have been admitted pursuant to Evid.R. 404(B).
We again note that the decision to admit or exclude relevant evidence rests within the trial court's discretion. See Robb,88 Ohio St.3d at 68. Evid.R. 404 applies to a trial court's decision of whether to admit "other acts" evidence. Evid.R. 404(B) states the following:
 (B) Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
 Appellant insists that testimony about Dino's prior conviction was admissible under Evid.R. 404(B) as proof of the identity of a perpetrator other than the defendant. Under these particular facts, we disagree.
Initially, we note that Evid.R. 404(B) is generally applied when attempting to admit other acts of a defendant in a criminal case. However, Evid.R. 404(B) uses the word "person" rather than "accused" or "defendant."
In State v. Lowe (1994), 69 Ohio St.3d 527, the Supreme Court of Ohio discussed the conditions that may permit other acts to be admitted as evidence of identity in a criminal trial. First, other acts can be introduced when those acts "form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment," and are "inextricably related to the alleged criminal act." Id. at 531, quoting Statev. Curry (1975), 43 Ohio St.2d 66, 73. Second, other acts may be admissible to prove identity by demonstrating a modus operandi applicable to the crime at issue. Lowe at 531. "Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid.R. 404(B)." Id., quoting State v. Jamison (1990), 49 Ohio St.3d 182, syllabus. A specific modus operandi is admissible "because it provides a behavioral fingerprint which, when compared to the behavioral fingerprints associated with the crime in question, can be used to identify the defendant as the perpetrator." Lowe at 531. Evidence of other acts must be related to and similar to the crime at issue in order to be admissible to prove identity. Id.
At trial, appellant denied that he committed rape and thereby put the issue of identity in dispute. Defense counsel attempted to introduce testimony regarding other acts of Dino, who was not even a witness at the trial.[1] Sharon Wagers, Dino's sister-in-law, began to testify that Dino had sexually molested her child. The prosecution immediately objected. After discussing the issue with the attorneys, the trial court judge ordered the jury to disregard that testimony. Defense counsel proffered that Dino had been convicted of molesting a child in the early 1990s and was under court order to avoid contact with children.
The trial court did not abuse its discretion when refusing to allow testimony regarding Dino's prior conviction. First, Dino's prior conviction allegedly occurred in the early 1990s, so it certainly does not provide an immediate background to the rape in this case, nor is it inextricably related to this rape. See Lowe,69 Ohio St.3d at 531. Second, there was no demonstration that Dino's prior crime revealed a modus operandi identifiable with Dino. There was no showing that Dino had committed a similar crime and that "a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense." See id., quoting State v. Smith (1990), 49 Ohio St.3d 137, 141. The second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT PERMITTED CERTAIN REBUTTAL EVIDENCE HEARD BY THE JURY.
 In his third assignment of error, appellant claims that it was error for the trial court to permit the state to present rebuttal evidence.
"Rebutting evidence is that given to explain, refute, or disprove new facts introduced into evidence by the adverse party; it becomes relevant only to challenge the evidence offered by the opponent, and its scope is limited by such evidence." State v.McNeill (1998), 83 Ohio St.3d 438, 446, certiorari denied (1999),526 U.S. 1137, 119 S.Ct. 1792. The determination as to what evidence is admissible as proper rebuttal rests within the trial court's discretion. Id.
After the state rested and the defense presented all of its witnesses, the state asked the trial court's permission to present testimony to rebut the defense witnesses' insinuations that E.M.'s story was fabricated. The trial court allowed Shauntee Akers and Detective Sherry Marcum to testify. The rebuttal testimony disputed the defense's allegations that E.M. was coached about what to say to investigators or to the trial court.
Reviewing the testimony of the rebuttal witnesses, we find that they challenged the testimony offered by the defense and that this testimony did not exceed the permissible scope of rebuttal. Therefore, we find that the trial court did not abuse its discretion by allowing this rebuttal testimony.[2] See Statev. Barker (1978), 53 Ohio St.2d 135, 145. The third assignment of error is overruled.
Assignment of Error No. 4:
 DEFENDANT-APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF COUNSEL.
 In his fourth assignment of error, appellant claims that he suffered from ineffective assistance of counsel during his trial. Specifically, appellant claims that he suffered ineffective assistance of counsel by defense counsel's failure to 1) proffer the nurse's notes or call the nurse to testify; 2) procure a copy of the entry of judgment of Dino's conviction; and 3) object to the state's rebuttal evidence.
To demonstrate a claim of ineffective assistance of counsel, a defendant must first show that under the circumstances, counsel's representation did not meet the objective standard of reasonable competence. Second, a defendant must show that he was prejudiced at trial as a result of this deficiency. Strickland v. Washington
(1984), 466 U.S. 668, 687, 104 S.Ct. 2052, 2064; State v. Mills
(1992), 62 Ohio St.3d 357, 370. Only if the defendant demonstrates that there is a reasonable possibility that, but for the unprofessional errors, the result of the proceedings against defendant would have been more favorable, will a reviewing court find prejudice. This probability must be sufficient to undermine confidence in the outcome of the case. State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus.
The effectiveness of counsel must be reviewed in light of the evidence against the defendant, with a "strong presumption that counsel's conduct falls within the wide range of professional assistance." Strickland, 466 U.S. at 689, 104 S.Ct. at 2065;State v. Lytle (1976), 48 Ohio St.2d 391, 397, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135. The appellate court must not second-guess trial counsel's strategic decisions. State v. Carter (1995), 72 Ohio St.3d 545, 558.
Appellant argues that defense counsel was ineffective by failing to proffer the nurse's notes, thereby depriving this court the opportunity to review these notes to determine whether E.M. should have read them to refresh her memory. Appellant also argues that defense counsel should have called the nurse as a witness to testify as to what the victim had told her and to authenticate her notes so that they might be admitted as evidence.
The nurse's notes are not part of the record because they were not admitted into evidence. There may exist evidence outside the record that supports appellant's claim of ineffective assistance of counsel. However, for the purposes of this appeal, our review is limited to the trial court record, which does not contain sufficient evidence to substantiate appellant's allegations. Where an appellant's claim of ineffective assistance of counsel is based upon facts not in the record, the appropriate remedy is a petition for postconviction relief, not direct appeal. State v.Cooperrider (1983), 4 Ohio St.3d 226, 228. Because appellant cannot present the notes for our review, we cannot say that appellant was prejudiced by defense counsel's failure to proffer the notes or to call the nurse to testify.
Appellant also asserts that defense counsel's failure to procure a certified copy of the entry of judgment of Dino's conviction was ineffective assistance of counsel. As discussed in the second assignment of error, evidence of Dino's bad acts was not admissible under the rules of evidence as applied to these particular facts. Therefore, had defense counsel offered a certified copy of the entry of judgment of Dino's conviction, it would not have been proper to admit it into evidence. Appellant also argues that that defense counsel should have objected to the state's rebuttal evidence. In the third assignment of error, we found that the rebuttal evidence was properly admitted.
Appellant cannot show that defense counsel's actions did not meet the standard of reasonable competence or that appellant was prejudiced. See Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. We find that appellant did not receive ineffective assistance of counsel. The fourth assignment of error is overruled.
Assignment of Error No. 5:
 THE ERRORS COMMITTED BY THE TRIAL COURT WERE CUMULATIVE, JUSTIFYING REVERSAL OF DEFENDANT-APPELLANT'S CONVICTION.
 In his fifth assignment of error, appellant argues that the cumulative effect of the substantive errors committed in this case prejudiced appellant and deprived him of a fair trial.
In light of our disposition of the first four assignments of error, we fail to see how the absence of prejudicial error can rise to the level of cumulative error. See State v. Moreland
(1990), 50 Ohio St.3d 58, 69. Appellant's fifth assignment of error is overruled.
 _______________ VALEN, J.
POWELL, P.J., and YOUNG, J., concur.
[1] A subpoena was delivered to Dino's place of residence on April 12, 1999, which was the first day of appellant's trial. However, Dino was not present when defense counsel called him to testify.
[2] Although there was a discussion regarding the admissibility of the state's rebuttal witnesses, defense counsel objected only to Marcum's testimony. Because the defense did not formally object to Akers' testimony, it would have been appropriate to review the admittance of her testimony under a plain error analysis. However, in the interest of judicial expediency in resolving this assignment of error as well as the claim raised in the fourth assignment of error regarding rebuttal witnesses, we have analyzed this question under the abuse of discretion standard, a stricter standard of review. In order to find plain error, it must appear on the face of the record that the error was committed and that, but for the error, the result of the trial clearly would have been otherwise so that to not consider the error would result in a clear miscarriage of justice. State v.Williford (1990), 49 Ohio St.3d 247, 252, citing State v.Cooperrider (1983), 4 Ohio St.3d 226, 227. Because the trial court's decision to admit rebuttal testimony did not amount to abuse of discretion, this decision certainly did not amount to plain error.