{¶ 80} I concur in the majority's resolution of Appellant's fourth assignment of error and believe, therefore, that Appellant's conviction for failure to stop after an accident should be vacated. However, I respectfully disagree with the majority's conclusion regarding the aggravated vehicular homicide conviction. Specifically, I disagree with the majority's conclusion that the trial court did not abuse its discretion by admitting certain photographs and evidence of prior bad acts.
 Gruesome Photographs {¶ 81} In this case, Appellant objected to the admission of three photographs of the victim taken at the medical examination which took place after the victim's death. Appellant argues that these pictures are irrelevant and that any possible probative value is substantially outweighed by their prejudicial effect.
 {¶ 82} Evid. R. 402 states that relevant evidence is generally admissible, but that "[e]vidence which is not relevant is not admissible." "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid. R. 401. However, even relevant evidence can be inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid. R. 403(A). A trial court's decision on both the relevance of any evidence and the admissibility of that evidence under Evid. R. 403(A) is reviewed for an abuse of discretion. State v.Allen, 73 Ohio St.3d 626, 633, 1995-Ohio-0283; State v. Lyles (1989),42 Ohio St.3d 98, 99. The phrase "abuse of discretion" implies that the trial court's attitude, as evidenced by its decision, was unreasonable, arbitrary, or unconscionable. State v. Busch, 76 Ohio St.3d 613, 616, 1996-Ohio-0082. The trial court must make this decision with regard to each allegedly gruesome photograph. State v. Woodards (1966),6 Ohio St.2d 14, 25.
 {¶ 83} Although the majority concedes that one of the pictures in question is gruesome, it never describes the contents of these photographs. The first of these three pictures, Exhibit 4, is a photograph of decedent lying on a coroner's table taken *Page 24 
lengthwise by someone standing at the decedent's feet. The decedent is clothed, but the photo reveals abrasions on the decedent's right arm and lower left leg and foot.
 {¶ 84} The second photograph, Exhibit 5, is a close-up picture of the decedent's head and shoulders. The decedent's head is resting sideways on the coroner's table. The shape of the decedent's face is distorted. There are cuts on the decedent's face, most of which are in and around the decedent's mouth. The photograph also shows multiple cuts on the decedent's tongue. There is also a visible cut under the decedent's chin which looks large, but the angle of the picture makes it impossible to see the severity of that injury. It appears the wounds which this picture shows have been cleaned.
 {¶ 85} The third photograph, Exhibit 6, is similar to the second, but the decedent's head has been held straight up, revealing the extent of the injury which could only be glimpsed in the second photograph. This photo reveals a large laceration, which appears to be inches long, wide, and deep, in the decedent's head from just below his chin to above and behind his ear. The photograph shows that the wound has been cleaned. Nevertheless, there are still large pieces of flesh hanging loosely around the opening. The picture also shows a clear view into a vacant space inside of the decedent's head.
 {¶ 86} Appellant argues that these photographs are gruesome, but "the mere fact that [a photograph] is gruesome or horrendous is not sufficient to render it inadmissible if the trial court, in the exercise of its discretion, feels that it would prove useful to the jury."State v. Maurer (1984), 15 Ohio St.3d 239, 265. Such photographs may corroborate the testimony of witnesses, help establish the intent of the accused, or show the nature and circumstances of the crime. SeeState v. Jalowiec, 91 Ohio St.3d 220, 230, 2001-Ohio-0026.
 {¶ 87} I agree with the majority that these photographs have some relevance. As the majority points out, the photographs corroborated the coroner's testimony about Summerville's appearance and that "blunt force" caused these injuries. Thus, they tend to support the idea that Summerville was killed after being struck by a *Page 25 
motor vehicle and are relevant to the issues involved in this case. The trial court did not abuse its discretion by finding these pictures relevant to the facts at issue.
 {¶ 88} However, I strongly disagree with the majority's conclusion that either it or the jury possessed the expertise to judge whether these photographs demonstrated that Appellant was acting recklessly when he struck Summerville. The majority concludes that Appellant must have been driving too fast for the conditions to cause the injuries inflicted upon Summerville. In making this conclusion, the majority is engaging in a form of accident reconstruction, i.e. determining what must have led up to an accident based on the results of that accident. However, the Ohio Supreme Court has held that accident reconstruction is an area of expertise that no one without the required training and/or experience, not even experienced police officers who have investigated multiple accidents, are qualified to give any opinion. Scott v. Yates,71 Ohio St.3d 219, 221, 1994-Ohio-0462. Neither courts nor juries can say that a victim's injury surely happened because a criminal defendant was driving too fast for the conditions without some expert assistance. Such a conclusion is simply outside our competency. Thus, the fact that Summerville suffered grievous wounds which killed him is not probative of whether Appellant was acting recklessly when he struck Summerville.
 {¶ 89} The real question is whether these photographs should have been excluded under Evid. R. 403(A), which requires the trial court to weigh their prejudicial effect against their probative value.
 {¶ 90} In this case, the photographs have very little probative value. As stated above, they corroborate the coroner's testimony, the main point of which was that Summerville was killed by being struck by a motor vehicle. However, Appellant did not seriously dispute the fact that Summerville was struck and killed by an automobile. Appellant's counsel conceded during closing argument that Summerville died from being struck by an automobile driven by Appellant.
 {¶ 91} However, not all of the photographs are gruesome and, therefore, likely to inflame the jury. Photographs are gruesome when they depict actual bodies or body parts in a way that will shock the jury. State v. Smith, 80 Ohio St.3d 89, 108-109, *Page 26 
1997-Ohio-0355. Photographs of head wounds can be gruesome even if the wound has been cleaned. State v. Scott, 98 CA 124, 2001-Ohio-3359, at 17.
 {¶ 92} Exhibit 4 is not a gruesome photograph. It depicts Summerville's body lying on the coroner's table, but does not show any appreciable blood or gore. Likewise, it does not appear as if Exhibit 5 is a gruesome photograph. It is a close-up of Summerville's face and shows that the face is distorted. However, it does not depict a serious wound. It is unlikely that the admission of either of these photographs was prejudicial to Appellant. Therefore, the trial court did not abuse its discretion in admitting these photographs.
 {¶ 93} Exhibit 6, on the other hand, is clearly a gruesome photograph. As described above, it depicts a large wound which, even though it has been cleaned, still shows blood, and gore in a way that is likely to shock a jury.
 {¶ 94} Given the very limited probative value of this picture and the extent to which it would shock the jury, the trial court abused its discretion when it admitted this exhibit into evidence. This photograph does little to help prove the State's case, while inflaming the jury's sensibilities at the same time. The State illustrated this point when it gave its justification for admitting the picture, i.e. that the jury should be able to see "what his injuries were." This is irrelevant to the facts at issue. There was no real need whatsoever for the State to introduce this evidence for any purpose other than to inflame the jury.
 {¶ 95} Appellant timely objected to the admission of this photograph. When a defendant objects to an error in the trial court, an appellate court reviews the error under the "harmless error" standard in Crim. R. 52(A). State v. Perry, 101 Ohio St.3d 118, 2004-Ohio-0297, at ¶ 15. Crim. R. 52(A) states that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." The government bears the burden of demonstrating that an error is harmless. Perry at ¶ 15. "An appellate court must reverse a conviction if the government does not satisfy this burden; unlike Crim. R. 52(B), Crim. R. 52(A) is mandatory, not permissive, and thus affords the appellate court no discretion to disregard the error." Id. *Page 27 
 {¶ 96} In its appellate brief, the State does not even bother meeting that burden. Instead, it incorrectly claims that Appellant bears the burden of proving that the error is harmful. Moreover, the evidence shows that the evidence in favor of Appellant's conviction is not overwhelming. Most of the evidence of Appellant's guilt comes from the testimony of Summerville's friend, Bussey. Bussey's testimony at trial differed from the statement he gave to police after the accident in some material aspects. For example, Bussey testified that Summerville was walking on the sidewalk when he was struck. However, in his statement Bussey said that Summerville was walking in the grass next to the road. Furthermore, there is some indication that Bussey is prejudiced against Appellant from a prior incident. These facts give reason to doubt Bussey's credibility.
 {¶ 97} In conclusion, one of the pictures the trial court admitted was gruesome and, while marginally relevant, had little probative value. In my judgment, the probative value of that picture was clearly outweighed by its prejudicial effect. The State has not tried to demonstrate how this error is harmless. Moreover, the evidence of Appellant's guilt was not overwhelming. Accordingly, I would find Appellant's first assignment of error is meritorious.
 Other Acts Evidence {¶ 98} Appellant also maintains that the trial court erred when it allowed Bussey to testify about a fight prior to the accident. Bussey had testified that he had "suspicions" about who was driving the vehicle which hit Summerville both in direct examination, cross-examination, and on redirect examination. On direct examination, Bussey stated that there had been an incident between Summerville and Appellant in a bar about a week before Summerville died. On redirect examination, Appellant testified that he suspected that Appellant was driving the vehicle because of "a fight prior to that before it happened" over objection.
 {¶ 99} Appellant contends that this testimony was improper "other acts" evidence and prejudiced him by inflaming the jury. The majority disagrees, questioning whether the testimony in question actually implicates Appellant in a prior *Page 28 
bad act and concluding that the evidence would be proper evidence of motive, even if it was prior bad acts evidence.
 {¶ 100} Evid. R. 404(B) prohibits the use of prior bad acts to prove a person's character and that they acted in accordance with that character, but allows this evidence to be used for different reasons. It provides:
 {¶ 101} "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 102} The exceptions within this Rule have been codified in R.C. 2945.59, which states:
 {¶ 103} "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
 {¶ 104} Both R.C. 2945.59 and Evid. R. 404(B) are to be strictly construed against the State and conservatively applied by trial courts.State v. DeMarco (1987), 31 Ohio St.3d 191, 194. Thus, this evidence is not admissible unless it tends to show by substantial proof one of the issues enumerated. State v. Broom (1988), 40 Ohio St.3d 277, 282. Furthermore, courts cannot admit these acts into evidence merely because the State asserts a proper purpose for it; the matter sought to be proved by this kind of evidence must genuinely be at issue in the case.State v. Hawn (2000), 138 Ohio App.3d 449, 462. Under the statute and Rule, evidence of prior bad acts "is admissible, not because it shows that the defendant is crime prone, or even that he has committed an offense similar to the one in question, but in spite of such facts."State v. Burson (1974), 38 Ohio St.2d 157, 158. *Page 29 
 {¶ 105} A trial court's decision to admit or exclude evidence under Evid. R. 404(B) is reviewed for an abuse of discretion. State v.Lowe, 69 Ohio St.3d 527, 532, 1994-Ohio-0345.
 {¶ 106} The majority questions whether testimony that Appellant was previously in a fight with the victim is actually character evidence subject to Evid. R. 404(B) since the circumstances surrounding that fight were not explained. However, statements that someone was in a fight clearly leads to the conclusion that they were a violent person, without the explanation of some mitigating circumstances. A criminal defendant should not be forced to explain why he is not actually violent, even though he had been in a fight. Thus, evidence of the fight was clearly evidence of a prior wrong or bad act.
 {¶ 107} Neither at trial nor on appeal has the State explained how the admission of this evidence is proper under any of the grounds set forth in either Evid. R. 404(B) or R.C. 2945.59 and the only grounds which appear to apply to this case is proof of identity.
 {¶ 108} In Lowe, the Ohio Supreme Court stated that "[i]dentity is the least precise of the enumerated purposes of Evid. R. 404(B)" and can be used in two situations. Id. at 530-531.
 {¶ 109} "First are those situations where other acts `form part of the immediate background of the alleged act which forms the foundation of the crime charged in the indictment,' and which are `inextricably related to the alleged criminal act.' State v. Curry (1975),43 Ohio St.2d 66, 73, 72 O.O.2d 37, 41, 330 N.E.2d 720, 725. For instance, if someone had seen Lowe trespassing on Mullet's property on the evening of the attack, or had seen him speeding away from the crime scene, or had found him trying to remove evidence from the crime scene, or had seen him threatening a witness, such evidence could be admitted to prove identity. Such evidence would directly tie Lowe to the crime at issue. The other acts the state seeks to introduce do not tie Lowe to the immediate background of, nor are they inextricably related to, the murders. The other acts in this case are separate from the planning, carrying out, and aftermath of the crimes at issue. *Page 30 
 {¶ 110} "Other acts may also prove identity by establishing a modus operandi applicable to the crime with which a defendant is charged. `Other acts forming a unique, identifiable plan of criminal activity are admissible to establish identity under Evid. R. 404(B).' State v.Jamison (1990), 49 Ohio St.3d 182, 552 N.E.2d 180, syllabus. `"Other acts" may be introduced to establish the identity of a perpetrator by showing that he has committed similar crimes and that a distinct, identifiable scheme, plan, or system was used in the commission of the charged offense.' State v. Smith (1990), 49 Ohio St.3d 137, 141,551 N.E.2d 190, 194. While we held in Jamison that `the other acts need not be the same as or similar to the crime charged,' Jamison, syllabus, the acts should show a modus operandi identifiable with the defendant.State v. Hutton (1990), 53 Ohio St.3d 36, 40, 559 N.E.2d 432, 438." Id. at 531.
 {¶ 111} The other acts evidence which the State introduced in this case does not fall into either of these two categories. Clearly, the other acts evidence in this case does nothing to establish a modus operandi. Furthermore, the fact that Summerville and Appellant were in a fight a week before the accident does nothing to directly tie Appellant to the crime at issue in this case.
 {¶ 112} Instead, this evidence goes to prove motive, i.e. that Appellant purposefully ran his car into Summerville in retaliation for or continuation of the prior fight. However, Appellant was not charged with purposefully killing Summerville. Instead, he was charged with aggravated vehicular homicide, which deals with recklessly causing the death of another, and failure to stop after an accident, which deals with knowingly failing to stop after an accident. R.C. 2903.06; R.C. 4549.02. Evidence which tends to prove that Appellant may have had a motive for killing Summerville is irrelevant to either of these charges and was likely to prejudice the jury against Appellant.
 {¶ 113} Finally, Appellant did not open the door to this testimony. On direct examination, Bussey testified that he had his suspicions about who killed Summerville, but did not state what those were. On cross-examination, Appellant asked whether Bussey had written those suspicions down, but did not ask Bussey *Page 31 
about what those suspicions actually were. On redirect, Bussey testified that he suspected Appellant because of the prior fight.
 {¶ 114} The doctrine of "opening the door" is "dangerously prone to overuse." United States v. Winston (C.A.D.C. 1971), 447 F.2d 1236, 1240. The introduction of otherwise inadmissible evidence under the "shield of this doctrine is permitted `only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence.'" Id., quoting California Ins. Co. v. Allen (C.A.5, 1956),235 F.2d 178, 180. In this case, Bussey's testimony on redirect about Appellant's fight did not even begin to address the issues which Appellant raised in his cross-examination of Bussey; the reasons for Bussey's suspicions are not related to why Bussey did not write those suspicions down.
 {¶ 115} The State argues that Appellant cannot show that the outcome of the trial would have been different had this evidence not been introduced. However, it once again fails to appreciate that it bears the burden of proving a lack of prejudice since Appellant objected to this testimony. For the reasons given above, the evidence of Appellant's guilt was overwhelming, so I cannot conclude that the admission of this evidence is harmless. Accordingly, the trial court abused its discretion when it admitted this evidence and Appellant's second assignment of error is also meritorious.
 Conclusion {¶ 116} In this case, the trial court committed prejudicial error when it admitted both gruesome photographs into evidence, since their prejudicial effect clearly outweigh their minimal probative value, and evidence that Appellant got into a fight with Summerville a week before Summerville's death, since that was irrelevant to the facts at issue and prejudicial. Therefore, Appellant's convictions should be vacated and this case remanded to the trial court for a new trial on the count of aggravated vehicular homicide. Since the majority disagrees with this conclusion, I must respectfully dissent from this aspect of its opinion. *Page 1