[Cite as *State v. Rouse*, 2011-Ohio-5097.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. Julie A. Edwards, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 10-CA-38 |
| LARRY R. ROUSE | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Tuscarawas County Court
                             of Common Pleas Case No. 2007 CR 08
                             0287


JUDGMENT:                    AFFIRMED

DATE OF JUDGMENT ENTRY:      September 29, 2011


APPEARANCES:

For Plaintiff-Appellee:                 For Defendant-Appellant:

ROBERT URBAN 0069730                    EUGENE H. NEMITZ, JR. 0011736
Tuscarawas County Prosecutor's Office   136 Second Street, N.E.
125 E. High Avenue                      New Philadelphia, Ohio 44663
New Philadelphia, Ohio 44663

*Delaney, J.*

{¶1} Defendant-Appellant, Larry Rouse, appeals from the judgment of the Tuscarawas County Court of Common Pleas, convicting him of one count of aggravated robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1), and petty theft, a misdemeanor of the first degree, in violation of R.C. 2913.02(A)(1). The State of Ohio is Plaintiff-Appellee.

{¶2} On July 22, 2007, Kimberly Asbury was working at the Sibley Mart Convenience Store in Strasburg, Ohio. Asbury was working by herself that evening, when at approximately 11:45 p.m., three men entered the store. Appellant approached Asbury and held a knife to her throat. A second man, wearing a yellow shirt, led her to the cash register and ordered her to "hurry up" and open the cash register. The third man stayed in the background. When she opened the register, the men took the money out of the cash register and ran out the side door to the street behind the store. They stole approximately $350.00

{¶3} Prior to the robbery, Appellant, his brother, Tommy Rouse, and his cousin, Robert Ray, were at Appellant's girlfriend's home in Dover, Ohio. Appellant's girlfriend, Delana Robison and her 15 year old daughter were present when Appellant, Tommy, and Robert discussed robbing a gas station. The three men changed clothes – Appellant put on a gray hoodie, Tommy put on a long sleeved yellow sweatshirt, and Robert put on a dark blue sweatshirt. The men also took hats from Delana's collection, including a camouflage hat with a leather bill. Tommy took Delana's daughter's sunglasses.

{¶4}    Appellant took Delana's car, against her wishes.  They drove away in her maroon Mercury Sable that had South Carolina license plates at approximately 9:00 p.m.

{¶5}    Approximately one hour later, a college student named Cory Myers stopped at a Speedway Convenience Store in New Philadelphia, Ohio.  While he was sitting in his car, he was approached by a man wearing a gray sweatshirt and white tennis shoes who offered to sell him "snow", i.e., cocaine.  The man was accompanied by two other men, one of whom was wearing a yellow sweatshirt.  The third man remained in the car and had a bandana on his head.  Myers observed that the three men were in a maroon Mercury Sable with a South Carolina license plate.

{¶6}    Myers called 911 and reported the incident.  At trial, he identified Appellant as being the man in the gray sweatshirt and white tennis shoes that approached him.  Myers was positive that the man who offered to sell him drugs was Appellant.

{¶7}    Sergeant Kutcher was working in Strasburg, when he heard on his cruiser radio about an incident at the New Philadelphia Speedway involving three male subjects in a maroon Mercury Sable with South Carolina license plates.  He also had heard about a domestic disturbance on Saltwell Road involving a maroon Mercury Sable with South Carolina license plates.  He then received a dispatch at approximately 11:55 p.m. of an armed robbery at the Sibley Mart.  Upon arriving at the area of the Sibley Mart, he found a camouflage hat, two pairs of sunglasses, and a dark blue sweatshirt in the alley directly behind the Sibley Mart.

{¶8} After the robbery, Delana Robinson stated that Appellant, Tommy, and Robert returned to her home and that their arguing woke her up. Appellant and Robert were yelling at Tommy for throwing the stuff he had on out of the car. Delana noted that the three men had changed clothes again. The gray sweatshirt that Appellant had been wearing was gone as was the yellow sweatshirt that Tommy had been wearing. Delana's hat and her daughter's sunglasses had not been returned.

{¶9} Delana noted that the men had started a bonfire outside. Robert left the residence to go home in his own vehicle. Appellant and Delana got into an argument and Delana's daughter called 911. The sheriff responded to the scene and began asking questions concerning Delana's maroon Mercury Sable. The sheriff asked her if she knew if it had been used in a robbery. She stated that she did not know if it had and Appellant refused to comment.

{¶10} While at Delana's residence, the sheriff found Tommy Rouse hiding in a shed on the property. The next morning, Delana found money in the shed.

{¶11} Appellant was taken into custody. The clerk at the Sibley Mart was unable to identify the robbers because their faces had been covered with bandanas; however, she did note that Appellant had the same height, build, and voice as the man who held the knife to her throat.

{¶12} Sergeant Kutcher confiscated three knives from Delana's kitchen, one of which the clerk identified as being similar to the knife that the robber had held to her throat. Delana verified that the knife came from her kitchen. The clerk was also shown a surveillance video from the New Philadelphia Speedway that was taken less than two

hours prior to the Sibley Mart robbery.  The video depicted two males, one in a yellow sweatshirt and one in a gray sweatshirt, both wearing white tennis shoes.

{¶13}  The clerk was able to identify the two men in the video by the clothes they were wearing and their build, as being two of the men who robbed her.  She also recalled that Appellant had been in the Sibley Mart approximately two weeks prior to the robbery.

{¶14}  Delana was able to identify the camouflage hat that Sergeant Kutcher found in the alley behind the Sibley Market.  She also identified one pair of sunglasses that Sergeant Kutcher found along with the hat as belonging to her daughter.  She identified the other pair of sunglasses that the officer found as belonging to her.  She stated that she commonly left those sunglasses in her car, and they were in the car when Appellant took it.  Additionally, she identified the dark blue sweatshirt that Sergeant Kutcher found as belonging to her.  She stated that it was in her home prior to the men leaving and that she believed that it was the sweatshirt that Robert Ray put on prior to exiting her house.

{¶15} She also viewed photos from the Speedway surveillance video and identified Appellant as being the man wearing the gray sweatshirt and white tennis shoes. She also identified the man in the yellow shirt and white shoes as Tommy Rouse. She additionally identified her camouflage hat as the one that Tommy was wearing.  She finally stated that Appellant had been at her home within six months prior to his trial trying to convince her not to testify against him.

{¶16} Subsequent to the investigation, Appellant was indicted by the Tuscarawas County Grand Jury on one count of aggravated robbery, a felony of the first

degree, in violation of R.C. 2911.01(A)(1), and one count of petty theft, a misdemeanor of the first degree, in violation of R.C. 2913.02(A)(1).  Initially, the trial court dismissed the indictment on speedy trial grounds.  This Court reversed that decision and remanded the case for trial.  See *State v. Rouse*, 5th Dist. No. 2007-AP-12-0078, 2008-Ohio-5891.  Appellant filed a motion to certify a conflict to the Ohio Supreme Court and said motion was overruled and his discretionary appeal to the Ohio Supreme Court was denied. *State v. Rouse*, No. 2008-2439.

{¶17}  A jury trial was scheduled for June 2, 2009, but was continued because Appellant failed to appear for trial.  A capias was issued for his arrest.  Appellant was arrested in January, 2010.  He was granted leave to file a motion to suppress, and the motion was overruled on July 15, 2010.

{¶18}  Appellant exercised his right to a jury trial on July 27, 2010, and the trial lasted two days.  The jury found Appellant guilty as charged in the indictment.  On September 1, 2010, he was sentenced to four years in prison.

{¶19}  It is from that judgment that Appellant now appeals, and raises six Assignments of Error:

{¶20}  "I. THE COURT ERRED IN ALLOWING THE EVIDENCE OF OTHER CRIMES, WRONGS OR ACTS BECAUSE OF THE SUBSTANTIAL DANGER THAT THE JURY WILL CONVICT THE DEFENDANT SOLELY BECAUSE IT ASSUMES THAT THE DEFENDANT HAS A PROPENSITY TO COMMIT CRIMINAL ACTS OR DESERVES PUNISHMENT REGARDLESS OF WHETHER HE OR SHE COMMITTED THE CRIME.  STATE V. SLAVEN (5TH APP. DIST., 2010), 2010-OHIO-6400, ¶29.

{¶21} "II. THE COURT ERRED IN FAILING TO FIND THAT THE IDENTIFICATION PROCEDURES USED BY OFFICER KUTCHER WITH COREY MEYERS WERE UNDULY SUGGESTIVE AND SUFFICIENTLY UNRELIABLE AS TO IMPLICATE ROUSE'S RIGHT TO DUE PROCESS.

{¶22} "III. THE COURT ERRED IN OVERRULING ROUSE'S MOTION TO SUPPRESS/MOTION IN LIMINE.

{¶23} "IV. THE JURY'S VERDICT FINDING ROUSE GUILTY SHOULD FAIL AS IT IS NOT SUSTAINED BY SUFFICIENT RELEVANT EVIDENCE.

{¶24} "V. THE JURY'S FINDING ROUSE GUILTY SHOULD FAIL AS IT IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶25} "VI. THE ALIBI TESTIMONY OF MELISSA ROUSE PROVES THAT LARRY ROUSE DID NOT RETURN TO ROBISON'S HOME UNTIL SOMETIME AFTER THE SIBLEY MART ROBBERY OCCURRED."

I.

{¶1} In his first assignment of error, Appellant argues that it was error for the trial court to allow the introduction of other acts evidence against Appellant.

{¶2} The admission or exclusion of evidence rests within the sound discretion of the trial court. Moreover, a determination as to whether evidence is unfairly prejudicial is left to the sound discretion of the trial court and will be overturned only if the discretion is abused. *State v. Robb*, 88 Ohio St.3d 59, 2000-Ohio-275, 723 N.E.2d 1019. "As a legal term, 'prejudice' is simply "[d]amage or detriment to one's legal rights or claims." Black's Law Dictionary (8th Ed.1999) 1218.

{¶3}    Extrinsic acts may not typically be used to suggest that the accused has the propensity to act in a certain manner. Evid.R. 404; *State v. Smith* (1990), 49 Ohio St.3d 137, 140, 551 N.E.2d 190. However, there are exceptions. Evid.R. 404(B) allows such evidence where it is offered to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Additionally, R.C. 2945.59 provides, "In any criminal case in which the defendant's motive or intent * * * is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

{¶4}    In determining whether the admission of other acts evidence is unduly prejudicial, we must consider whether the evidence is offered for a proper purpose, ie., whether it is relevant; whether, when engaging in a 403 balancing, the probative value of the evidence substantially outweighs any potential for unfair prejudice; and whether the jury, upon request, is instructed that the evidence is only to be considered for the proper purpose for which the evidence was admitted.  *Huddleston v. United States* (1988), 485 U.S. 681, 108 S.Ct. 1496.

{¶5}    Appellant contends that it was error for the trial court to permit the State to introduce evidence that Appellant approached Mr. Myers at a Speedway in New Philadelphia on the night of the Sibley Mart robbery and offer to sell him cocaine.

{¶6}    At trial, Myers identified Appellant as the man who approached him. Myers was able to establish that Appellant was wearing a gray sweatshirt, that the man

with him was wearing a yellow sweatshirt, and that a third man was with them in the car, wearing a bandana. He stated that the men were in a maroon Mercury Sable with South Carolina license plates. This information directly linked Appellant and his accomplices to the robbery at the Sibley Mart.

{¶7} While the clerk at the Sibley Mart was unable to identify her assailants by face, because they were wearing bandanas, she was able to identify the clothing they were wearing, which matched the description of the men who approached Myers immediately preceding the Sibley Mart robbery. The clerk was also able to identify the men based on their build, the Appellant's voice, and the knife that was held to her throat.

{¶8} As a result of the video obtained from Speedway and the still shots exacted from that video, Delana was additionally able to identify the men as being Appellant, Tommy, and Robert based on the clothing they were wearing when they left her residence.

{¶9} Any mention of Appellant's encounter with Mr. Myers went to show Appellant's identity regarding the robbery committed immediately after his encounter.

{¶10} Moreover, mention of a domestic encounter involving Delana and Appellant earlier in the evening goes to show Appellant's identity. Delana explained that Appellant took her maroon Mercury Sable with South Carolina license plates, that he took her camouflage hat, her sunglasses, and her sweatshirt. She was also able to identify what all three men were wearing prior to leaving her residence. Additionally, we would note that the court gave a limiting instruction as follows when Delana was questioned about the domestic violence incident, "You're not to consider whether or not

Mr. Rouse is guilty or not guilty of domestic violence.  So that's not the issue in the trial, ladies and gentlemen."

{¶11}  Appellant has failed to show how he was prejudiced by the admission of this evidence or that the prejudice outweighed the probative nature of the evidence.

{¶12}  Appellant's first assignment of error is overruled.

II.

{¶13}  In Appellant's second assignment of error, he argues that the trial court erred in overruling his motion to suppress Cory Myers' identification of Appellant.

{¶14}  Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact.  *State v. Long* (1998), 127 Ohio App.3d 328, 713 N.E.2d 1.  During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility.  *State v. Brooks*, (1996), 75 Ohio St.3d 148, 661 N.E.2d 1030.  A reviewing court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence.  *State v. Metcalf* (1996), 111 Ohio App.3d 142, 675 N.E.2d 1268.  Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard.  *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141.

{¶15}  There are three methods of challenging a trial court's ruling on a motion to suppress on appeal.  First, an appellant may challenge the trial court's finding of fact.  In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence.  See *State v.*

*Fanning* (1982), 1 Ohio St.3d 19, 1 Ohio B. 57, 437 N.E.2d 583; and *State v. Klein* (1991), 73 Ohio App.3d 486, 597 N.E.2d 1141. Second, an appellant may argue that the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See *State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 623, 620 N.E.2d 906.

{¶16} In the case at bar, Appellant argues that the trial court should have suppressed the testimony of Myers. Myers testified that he was at the Speedway Gas Station in New Philadelphia on the evening of July 22, 2007, and that he was approached by a man, later determined to be Appellant, who offered to sell him cocaine. Appellant leaned in Myers' car window, giving Myers a clear depiction of Appellant's face.

{¶17} Myers identified Appellant in person at the suppression hearing based on his up close contact with Appellant in the parking lot.

{¶18} Myers was unable to identify a photograph of Appellant in a photo array, as according to Sergeant Kutcher, no photograph of Appellant was presented to Myers. Appellant claims that this "out of court identification" was unduly suggestive. Myers made no identification based on photo arrays and also was unable to identify Appellant from a dash cam video.

{¶19} We do not find that Appellant has presented any proof that the potential identification procedures were so suggestive as to create a substantial likelihood of misrepresentation.

{¶20} Regardless, the in-court identification is valid. No due process violation will be found where an identification does not stem from an impermissibly suggestive confrontation but is instead the result of observations at the time of the crime. In determining whether an identification is reliable, a court must consider (1) the witness's opportunity to view the suspect at the time of the incident, (2) the witness's degree of attention, (3) the accuracy of the witness's prior description, (4) the witness's certainty when identifying the suspect at the time of the confrontation, and (5) the length of time elapsed between the crime and the identification. *State v. Waddy* (1992), 63 Ohio St.3d 424, 439, 588 N.E.2d 819.

{¶21} Myers had an opportunity to view Appellant at the time of the incident, he was sure of Appellant's appearance, having described his attire as well as that of his accomplice, which were verified by still photos and video of the incident, and he was certain as to his in court identification.

{¶22} Appellant's second assignment of error is overruled.

### III.

{¶23} In Appellant's third assignment of error, he argues that the trial court erred in overruling his motion in limine and his motion to suppress evidence. We have already set forth the standard for determining whether a trial court erred in denying a motion to suppress in our disposition of Appellant's second assignment of error, and incorporate such herein.

{¶24} Appellant stated at the motion hearing that the evidence he wished to suppress dealt with evidentiary issues and physical evidence and not with constitutional issues. Thus, the trial court treated the motion as a motion in limine.

{¶25} Appellant challenged the following evidence: (1) the identification of Appellant by Cory Myers; (2) testimony pertaining to alleged bad acts, i.e., offering to sell Myers cocaine at the Speedway; (3) video evidence from the Speedway surveillance camera; (4) photographs procured at Sibley Mart; and (5) physical evidence, i.e., blue sweatshirt, sunglasses, baseball cap, steak knives.

{¶26} Addressing these evidentiary matters in turn, we have already disposed of issues one and two. The identification was legal, as was the testimony related to the potential drug transaction. As such, we will not rehash those matters here.

{¶27} Regarding Appellant's contention that the video evidence from Speedway was admitted in error, we find no support to bolster Appellant's argument. The video corroborates the testimony of the witnesses, including what Appellant and his accomplices were wearing, that the clothing was the same that they were wearing when they left Delana's residence, and that the clothing was the same clothing that they were wearing when the robbed the Sibley Mart. The probative value outweighs any prejudice under the Evid. R. 403 balancing test.

{¶28} Appellant additionally contests the trial court's decision to admit the photographs of the Sibley Mart. Such photographs do not prejudice Appellant, as they showed location of the crime and gave the jurors points of reference in making their decision. The jurors were aware that the photographs were not taken contemporaneously with the crime. Moreover, Sergeant Kutcher was present when the

photographs were taken and could testify that the photographs were substantially similar to the Sibley Mart as it existed on the date of the crime in question. Such pictures were relevant to assist the jury in understanding the testimony of the witnesses.

{¶29} Finally, Appellant argues that it was error for the trial court to admit physical evidence at trial. Specifically, he argues that the blue sweatshirt, sunglasses, baseball hat, and steak knives should not have been admitted.

{¶30} All of these pieces of evidence had significant, probative value that aided the trier of fact in coming to an ultimate conclusion and the evidence was more probative than it was prejudicial under the Evid. R. 403 balancing test.

{¶31} Cory Myers testified that the blue sweatshirt was being worn by the third man in the car. The Sibley Mart employee testified that the third person was wearing dark colored cloths. Sergeant Kutcher found a dark blue sweatshirt in the alley behind the Sibley Mart, which Delana identified as being hers.

{¶32} The sunglasses, which were also recovered in the alley behind the Sibley Mart, were identified by Delana as belonging to her and her daughter as well. Tommy Rouse was wearing one pair when he left Delana's house and the other pair was in Delana's car when Appellant and his accomplices took the car, which was the same car that Myers observed Appellant exit at the Speedway.

{¶33} The baseball cap, which was a distinctive camouflage hat with a leather bill, also provided relevant, probative evidence to the jury. Tommy Rouse left Delana's house wearing the hat and he was also wearing it when he entered the Speedway gas station wearing the yellow sweatshirt. The ball cap was recovered with the blue sweatshirt and sunglasses directly behind Sibley Mart.

{¶34} Finally, the admission of the steak knives was relevant. The knives were secured from Delana's house by Sergeant Kutcher. One of the knives was identified by the clerk at the Sibley Mart as being similar to the knife that was held to her throat during the robbery. Moreover, Delana's daughter stated that she observed one of the three men rummaging through the kitchen drawer of her home looking for a steak knife.

{¶35} This evidence was all admissible. It is up to the trier of fact to determine the weight to be given to such evidence.

{¶36} The trial court did not err in admitting this evidence.

{¶37} Appellant's third assignment of error is overruled.

IV. & V.

{¶38} In Appellant's fourth and fifth assignments of error, he argues that his conviction was not supported by sufficient evidence and that it was against the manifest weight of the evidence.

{¶39} When reviewing a claim of sufficiency of the evidence, an appellate court's role is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. Contrary to a manifest weight argument, a sufficiency analysis raises a question of law and does not allow the court to weigh the evidence. *State v. Martin* (1983), 20 Ohio App.3d 172, 175. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541.

{¶40} Conversely, when analyzing a manifest weight claim, this court sits as a "thirteenth juror" and in reviewing the entire record, "weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541, 548, quoting *State v. Martin* (1983), 20 Ohio App.3d 172, 175.

{¶41} In order to convict Appellant of aggravated robbery, the State had to prove that Appellant did:

{¶42} "(A) * * * in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following:

{¶43} "(1) Have a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it * * *"

{¶44} A theft offense is defined, in R.C. 2913.02(A)(1) as follows:

{¶45} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:

{¶46} "(1) Without the consent of the owner or person authorized to give consent."

{¶47} In the present case, Kimberly Asbury, who was a clerk at the Sibley Mart Convenience Store, testified that three men entered the store and robbed her. She

stated that a man wearing a gray sweatshirt put a knife to her throat and, along with a man wearing a yellow sweatshirt, led her to the cash register, and made her withdraw the money from the register. They told her to "hurry up, bitch" and when the men got the money, they fled.

{¶48} Earlier that evening, Appellant left his girlfriend, Delana's house, wearing a gray sweatshirt and white tennis shoes. His brother, Tommy, was wearing a yellow sweatshirt, and their friend Robert, was wearing Delana's blue sweatshirt. Tommy took Delana's camouflage hat and Delana's daughter's sunglasses. The three men took Delana's maroon Mercury Sable, which was observed by Cory Myers at a Speedway in New Philadelphia when Appellant approached him and asked him if he wanted to buy cocaine from Appellant.

{¶49} The men rummaged through Delana's kitchen drawers and took steak knives, one of which the clerk from Sibley Market identified as being similar to the one held to her throat during the robbery.

{¶50} After the robbery, Sergeant Kutcher found the blue sweatshirt, sunglasses, and camouflage hat in the alley directly behind the market. Delana identified the property as belonging to her.

{¶51} Delana testified that earlier, the men talked about robbing a store. When they arrived back home after their evening escapade, they woke her up arguing as to why Tommy had thrown the clothing he had on out of the car.

{¶52} When officers arrived at Delana's house after her daughter called 911, Tommy was found hiding in the shed. The next day, Delana found money hidden in the shed.

{¶53} Delana was shown photographs from the Speedway surveillance video and positively identified Appellant and Tommy as being present in the photographs.

{¶54} For the six months prior to trial, Appellant tried to convince Delana not to testify against him.

{¶55} We find that sufficient evidence existed to convict Appellant and find no evidence indicating that the jury lost its way in convicting Appellant.

{¶56} Appellant's fourth and fifth assignments of error are overruled.

VI.

{¶57} In Appellant's sixth assignment of error, Appellant argues that the jury erred in failing to acquit him based on the testimony of his alibi witness.

{¶58} Appellant's cousin testified on his behalf and stated that Appellant knocked on her door in Wooster, Ohio on July 22, 2007, at 11:40 p.m. She alleged that he arrived on foot and that she did not let him in.

{¶59} Determining the credibility of witnesses in within the province of the trier of fact. See *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. "It is the trier of fact's role to determine what evidence is the most credible and convincing. The fact finder is charged with the duty of choosing between two competing versions of events, both of which are plausible and have some factual support. Our role is simply to insure the decision is based upon reason and fact. We do not second guess a decision that has some basis in these two factors, even if we might see matters differently." *State v. Murphy*, 4th Dist. No. 07CA2953, 2008–Ohio–1744, at ¶ 31. Further, insofar as the defense provided alibi witnesses, the jury was free to give

credence, or not, to whatever portions of the testimony, if any, it found credible., 8th Dist. No. 89588, 2008-Ohio-1265.

{¶60} Appellant's sixth assignment of error is overruled.

{¶61} For the foregoing reasons, the judgment of the Tuscarawas County Court of Common Pleas is affirmed.

By: Delaney, J.

Farmer, P.J. and

Edwards, J. concur.

_____
HON. PATRICIA A. DELANEY

_____
HON. SHEILA G. FARMER

_____
HON. JULIE A. EDWARDS

[Cite as *State v. Rouse*, 2011-Ohio-5097.]

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| LARRY R. ROUSE | : | |
| | : | |
| Defendant-Appellant | : | Case No. 10-CA-38 |
| | : | |

For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Tuscarawas County Court of Common Pleas is affirmed. Costs assessed to Appellant.

_____
HON. PATRICIA A. DELANEY

_____
HON. SHEILA G. FARMER

_____
HON. JULIE A. EDWARDS